[No. 3678–2. Division Two. October 23, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. KEVIN KING, *Appellant.*

*Brian P. Coughenour* for appellant (appointed counsel for appeal).

*Grant S. Meiner, Prosecuting Attorney,* for respondent.

SOULE, J.—Defendant was charged with assault in the second degree based upon RCW 9A.36.020(1)(b).[1] He appeals from a judgment of conviction and a sentence to the Division of Institutions of the Department of Social and Health Services. We affirm the judgment and sentence.

---

[1] RCW 9A.36.020(1)(b) states:

"(1) Every person who, under circumstances not amounting to assault in the first degree shall be guilty of assault in the second degree when he:

". . .

"(b) Shall knowingly inflict grievous bodily harm upon another with or without a weapon; or"

On the evening of September 7-8, 1977, the victim, Marvin McGuire, and defendant were independently indulging in fairly extensive recreational drinking at the Vagabond Restaurant in Forks. By the end of the evening McGuire was highly intoxicated. Defendant's condition was less clear. Both men were loggers and were somewhat acquainted. Their concurrent presence at the Vagabond was coincidental, each being there in the primary company of others, although during the evening there was apparently some friendly conversation and horseplay between the two. Toward closing time defendant took offense at something said or done by McGuire, flew into a rage and challenged McGuire to come outside and "have it out." Defendant then left the premises. McGuire did not follow at once. He remained inside and there was substantial evidence from which the jury could find that he was reluctant to engage in combat. However, eventually he did go outside because, as two witnesses remember, McGuire said he did not want defendant to think he was "chicken." There was some evidence that when McGuire came outside defendant immediately attacked him by kicking him in the body, knocking him to the pavement, kicking him in the head and then taking McGuire's head and beating it on the pavement despite McGuire's effort to terminate the beating by saying "I quit Kevin, I quit." The record also contains testimony that the encounter was by no means that violent.

McGuire was thereafter taken to the hospital in Forks. Because of his alcoholic condition, the doctor was unable to assess his potential injuries, particularly with respect a possible concussion. By careful cross-examination, defense counsel developed the fact that the manifestations of concussion and of heavy intoxication can be substantially the same. Because of the confusion of symptoms, defendant was transferred to the hospital in Port Angeles as a precautionary measure. He was released after 2 days, but had headache problems for a month thereafter.

Defendant's assignments of error basically raise two issues: one concerns the effectiveness of counsel, and the

other relates to the admission of certain hearsay testimony at the time of sentencing.

The test used to determine whether a criminal defendant was denied effective assistance of counsel `is whether, after considering the entire record, it can be said that the accused was afforded an effective representation and a fair trial. *State v. Adams,* 91 Wn.2d 86, 89, 586 P.2d 1168 (1978); *State v. Myers,* 86 Wn.2d 419, 424, 545 P.2d 538 (1976); *State v. Jury,* 19 Wn. App. 256, 576 P.2d 1302 (1978). Counsel on appeal urges us to consider a different standard, the so-called objective standard discussed in *Beasley v. United States,* 491 F.2d 687, 696, (6th Cir. 1974). This test was discussed in *State v. Adams, supra,* and the court declined to adopt it, stating at page 90:

> Our test recognizes that "the method and manner of preparing and presenting a case will vary with different counsel." *State v. Thomas* [71 Wn.2d 470, 429 P.2d 231 (1967)], *supra* at 472. In other words, *if a defense counsel's trial conduct,* which is later complained of, *can be characterized as legitimate trial strategy or tactics,* it cannot serve as the basis for a claim that a defendant received ineffective assistance of counsel.

(Citations omitted. Italics ours.) *Adams* also observed that even under the *Beasley v. United States* test "trial tactics cannot serve as a basis for a claim of inadequate representation, unless these tactics would be considered incompetent by lawyers of ordinary training and skill in the criminal law." *State v. Adams, supra* at 91.

After a careful reading of the record, we conclude that, measured by either of the foregoing tests, the criticized actions of trial counsel can be characterized as legitimate strategic or tactical decisions or were otherwise dictated by the realities of the case as it appears from the record.

At this point it is also appropriate to note that our determination of competency must be made from a review of the record itself. We cannot go outside the record in the course of appellate review. *State v. White,* 81 Wn.2d 223,

500 P.2d 1242 (1972); *State v. Humburgs,* 3 Wn. App. 31, 37, 472 P.2d 416 (1970).

Defendant had been represented successfully in an earlier unrelated action by the same counsel of whose performance he now complains. Although his brief lacks clarity in this regard, he now seems to urge that he did not have effective assistance of counsel in the present case for 10 reasons:

1. Defendant complains of the failure of his counsel to call other witnesses, including himself. In general, the decision to call or not call a witness is a matter of legitimate trial tactics. *State v. Hess,* 86 Wn.2d 51, 541 P.2d 1222 (1975); *State v. Floyd,* 11 Wn. App. 1, 521 P.2d 1187 (1974). However, there is a qualification to the rule. Apparently a criminal defendant has an absolute right to testify in his own behalf which right cannot be abrogated by defense counsel. *People v. Freeman,* 76 Cal. App. 3d 302, 142 Cal. Rptr. 806, 810–11 (1977); *ABA Standards Relating to the Prosecution Function and the Defense Function* § 5.2(a), Commentary at 238 (Approved Draft, 1971). *See generally Harris v. New York,* 401 U.S. 222, 28 L. Ed. 2d 1, 4, 91 S. Ct. 643 (1971). Therefore, if a criminal defendant alleges in a subsequent habeas corpus or personal restraint proceeding that his attorney actually prevented him from testifying in his own behalf, it would appear proper to remand for an evidentiary hearing on this issue. This is in contrast to an allegation in a subsequent proceeding that defense counsel merely advised defendant against testifying as a matter of trial tactics. If defendant accepts this tactical advice and is not acquitted of the charges, he cannot later allege that he was denied effective counsel because he accepted the advice of his attorney and did not testify. *E.g. United States ex rel. Johnson v. Johnson,* 531 F.2d 169, 176–77 (3d Cir. 1976); *United States v. Ladley,* 517 F.2d 1190 (9th Cir. 1975); *United States ex rel. Tyrrell v. Jeffes,* 420 F. Supp. 256, 272 (E.D. Pa. 1976).

Unfortunately, on the record before us, we have no means of knowing the circumstances under which the decision was made not to call the defendant. We have only the defendant's unsworn assertion. His contention in this regard is probably reviewable in a personal restraint proceeding where evidence can be received, but the record is such that it is not reviewable in this direct appeal. *State v. White, supra; State v. Humburgs, supra.*

2. Allied to the failure to call the defendant as a witness is the complaint that counsel did not offer an instruction on the effect of defendant's failure to testify. The use of such an instruction presents counsel with a tactical choice. It must be given by the court if requested by the defense,[2] but some defendants do not want it given because they feel that such an instruction highlights defendant's silence and enables the prosecutor to point out that he did not testify by using the court's own words, thereby undermining the protection afforded by *Griffin v. California,* 380 U.S. 609, 14 L. Ed. 2d 106, 85 S. Ct. 1229 (1965). *See State v. East,* 3 Wn. App. 128, 132, 474 P.2d 582 (1970). Therefore, failure to propose an instruction similar to WPIC 6.31 on the failure of the defendant to testify can hardly be regarded as evidence of incompetent counsel.

3. Defendant suggests that counsel was incompetent because he based his defense primarily on the theory that this was a "mutual affray," two tough loggers choosing one another after a drinking bout. Granted that such a defense is not legally recognized, we nevertheless recognize it as a not unusual argument directed to the common sense of the jury. Every trial judge has seen such a tactic prove effective despite carefully drawn instructions which make no provision for the theory. We observe, perhaps gratuitously but we hope not invidiously, that such an argument could well be favorably received by local jurors familiar with the behavior patterns of loggers in western Clallam County. The employment of such a tactic is understandable to us. It

[2]*See* WPIC 6.31, Note on Use.

did not work in this case, but a bad result does not establish that counsel was ineffective. Defendant is not guaranteed "successful assistance of counsel." *State v. Adams, supra.*[3]

■ 4. Complaint is made that counsel did not offer an instruction on self–defense. The undisputed evidence is that defendant challenged McGuire to a fight, lay in wait for him at a point removed from the place of challenge, then struck the first and perhaps only blows. The evidence simply does not support a self–defense instruction. *Cf. State v. Jelle,* 21 Wn. App. 872, 587 P.2d 595 (1978). Counsel is not required to present a defense not warranted by the demonstrable facts. *State v. White,* 5 Wn. App. 283, 487 P.2d 243 (1971), *rev'd on other grounds,* 81 Wn.2d 223, 500 P.2d 1242 (1972).

5. Defendant complains because counsel failed to offer an instruction on the lesser included offense of simple assault. Such an instruction would almost have insured a conviction for at least a misdemeanor. Counsel's tactic, as demonstrated by his argument to the jury, was to attempt to persuade the jurors that the affray was not as violent as some witnesses suggested and that the injuries sustained did not produce pain and suffering of a sufficient magnitude to qualify as grievous bodily harm. It was an all–or–nothing tactic that well could have resulted in an outright acquittal. *Cf. Heinlin v. Smith,* 542 P.2d 1081 (Utah 1975). *See also State v. Walker,* 13 Wn. App. 545, 550, 536 P.2d 657 (1975).

■ 6. Counsel did not offer an instruction on the defense of voluntary intoxication as it affected defendant's ability to form the specific intent to inflict grievous bodily harm. Before such an instruction is proper, two things must be established: the first is the fact of drinking, and the second is the effect of the drinking upon the defendant as it

---

[3]Counsel's argument that employment of such a tactic reduces the trial to a show and a farce does not correspond with the experience of the writer of this opinion, who has observed the defense of criminal cases for over 26 years from the vantage point of the superior court bench.

relates to his mental processes, specifically his ability to form an intent. *State v. Thompson,* 17 Wn. App. 639, 564 P.2d 820 (1977); *State v. Zamora,* 6 Wn. App. 130, 491 P.2d 1342 (1971). *See also State v. Mriglot,* 88 Wn.2d 573, 564 P.2d 784 (1977); *State v. Boyd,* 21 Wn. App. 465, 586 P.2d 878 (1978); *People v. Obie,* 41 Cal. App. 3d 744, 116 Cal. Rptr. 283 (1974). There is insufficient evidence of the effect of the drinking on King to support an instruction on voluntary intoxication as affecting his ability to form a specific intent.

*State v. Norby,* 20 Wn. App. 378, 579 P.2d 1358 (1978), cited by defendant, does not discuss the necessity of proving the subjective effects of drinking on the defendant before the instruction is proper. That case seems to assume the existence of the evidence from the mere fact of drinking, an assumption which the cases previously cited do not permit. For that reason, *Norby* is not, in our opinion, persuasive in this case where there clearly is no evidence of the effect of the drinking on defendant's mental processes.

Contrary to the statement in defendant's brief that trial counsel argued to the jury that the participants in the fight were too intoxicated to intend any particular mental state, we find no such argument in the record. With respect to the defendant, the only reference made by trial counsel to his client's intoxication was to testimony that, after the King–McGuire fight, King tried to postpone further combat with the witness Eadus by saying, "Tomorrow sometime when I am sober." Rather than showing a lack of reflective mental capacity, such a remark suggests quite the opposite.

7. Complaint is made that counsel failed to offer an instruction on grievous bodily harm in terms more favorable than that given by the court.[4] The instruction offered was sound and defendant even now does not suggest how it could have been improved.

---

[4]Court's instruction No. 7 states:

"Grievous bodily harm means an injury of such a nature as to produce severe pain and suffering."

8. Defendant complains that his counsel failed to file an affidavit of prejudice against the trial judge who had heard a previous case involving the defendant. The decision to file an affidavit of prejudice is clearly a matter of strategy. Nothing in the record suggests that there was reason to ask for a change of judge. However, the matter of handling certain charges made in defendant's pro se brief and alluded to in the brief filed by counsel on appeal will be discussed thereafter insofar as they assert factual allegations outside of the record before us.

9. Complaint is made that trial counsel took no exception to the court's instructions. Our examination of the record discloses that the instructions were complete and objectively composed. No specific suggestions are made as to how they could have been improved from the defendant's point of view.

10. Defendant complains that his counsel admitted that an assault did occur. Given the facts disclosed by the record, counsel was wise in so doing. His defenses were (1) to appeal to the jury's common sense, hoping that he could persuade them to absolve the defendant because of the circumstances, and (2) that the injuries did not amount to grievous bodily harm. There was no use glossing over the fact that an offensive touching of some sort had occurred.

With respect to events at the sentencing, defendant complains that inadmissible hearsay evidence was presented by the deputy prosecuting attorney, who told the court that the defendant had stated that he was going to get the victim and the witnesses who testified against him at the trial. In the course of sentencing proceedings it was disclosed that the information had been given to the deputy prosecuting attorney by the probation officer, who had prepared a presentence report favorable to the defendant in that he did not recommend imprisonment.

Due process considerations come into play at the time of sentencing and require that if hearsay allegations incorporated in a presentence report are challenged that defendant be given a chance to rebut them. *State v. Bolton,*

23 Wn. App. 708, 598 P.2d 734 (1979); *State v. Short*, 12 Wn. App 125, 528 P.2d 480 (1974). We believe the same rationale applies to verbal statements made at the time of the sentencing. The record demonstrates that not only did defense counsel deny that certain threatening statements were made, but that shortly thereafter, defendant himself was asked by the court if he had anything to say and his reply was in the negative. The record thus demonstrates that the defendant did have an opportunity to rebut the charges and chose to say nothing. Under such circumstances, we find no error.

### DEFENDANT'S CONTENTIONS SET FORTH IN HIS PRO SE BRIEF

By his pro se brief defendant seeks review of matters which cannot be resolved by resort to the record. They include charges that: (1) defendant asked his trial attorney if there was some way to disqualify the trial judge and that his attorney failed to advise him of his right to change of judge. Within this charge is also an assertion that the trial attorney was possessed of information which should have caused him to seek a change of judge; (2) trial counsel failed to do an adequate pretrial investigation, and released witnesses who would have denied the kicking or banging of the head on the pavement; (3) trial attorney refused to put defendant on the stand although defendant specifically asked to testify; (4) trial counsel did not offer a simple assault instruction even though defendant had offered to plead to simple assault and was willing to accept a simple assault verdict rather than hazard the all–or–nothing tactic; (5) trial counsel did not show defendant the presentence report prior to sentencing, thus depriving him of an opportunity to rebut certain statements contained in it.

In *State v. Humburgs*, 3 Wn. App. 31, 36, 472 P.2d 416 (1970), when faced with contentions concerning matters not

in the record, the court said:

> The contentions now made would require us to make a determination of the truth of defendant's ex parte post trial claims concerning matters occurring out of court. For all we know, an evidentiary hearing would disclose that the defendant's present statements are controverted and that the decisions made concerning trial management were tactical decisions of trial counsel in discharge of his duty to best represent the defendant. If there be a basis for the claims now made in an effort to show that, after considering the entire record, the accused was denied a fair and impartial trial, that basis must be established in a separate proceeding, the merits of which we do not prejudge.

(Citations omitted.)

In *State v. White,* 5 Wn. App. 283, 487 P.2d 243 (1971), the Court of Appeals was faced with a contention of ineffective counsel which could not be determined within the four corners of the record. A majority ordered a remand for a factual hearing. The dissent pointed out that under *State v. Humburgs, supra,* the proper procedure was to bring an independent proceeding in habeas corpus. Upon review by the Supreme Court, the order of remand was reversed, the Supreme Court holding that the dissenting opinion in the Court of Appeals expressed the proper law. *State v. White,* 81 Wn.2d 223, 500 P.2d 1242 (1972).

Therefore, we hold that with respect to the matters outside of the record about which defendant complains the only remedy is to bring an independent proceeding by way of personal restraint petition under RAP 16.3. Then, if an evidentiary hearing is held, trial counsel can dispute the allegations, explain his tactics and otherwise defend the charges leveled against him. In connection with such a proceeding we note that (CPR) DR 4-101(C)(4) permits a lawyer to reveal confidential information received from his

client if necessary to defend himself against an accusation of wrongful conduct brought by that client.

PEARSON, C.J., and PETRIE, J., concur.

Reconsideration denied November 6, 1979.