152 P.3d 349 (2007)
STATE of Washington, Respondent,
v.
Elmer Lawrence O'CONNELL II, Appellant.
In re the Matter of the Personal Restraint Petition of Elmer Lawrence O'Connell II, Petitioner.
Nos. 23563-7-III, 25340-6-III.
Court of Appeals of Washington, Division 3.
February 6, 2007.
*351 Janet G. Gemberling, Gemberling & Dooris PS, Spokane, WA, for Appellant(s).
Kevin Michael Korsmo, Spokane, WA, for Respondent(s).
SCHULTHEIS, J.
¶ 1 Any person who has been convicted three times for "most serious offense" felonies is a persistent offender subject to a life sentence without the possibility of parole. Former RCW 9.94A.030(29) (1999); former RCW 9.94A.120(4) (2000). Elmer O'Connell II was convicted in 2001 of first degree robbery, a most serious offense. Former RCW 9.94A.030(25)(a); former RCW 9A.56.200 (1975). The sentencing court found that Mr. O'Connell had been convicted previously of two most serious offenses, one in March 1993 and another in August 1994. On the basis of this criminal history, he was sentenced to life without possibility of parole.
¶ 2 Mr. O'Connell appeals, contending the trial court violated his Sixth Amendment right to a jury trial by basing his sentence on the court's findings as to the dates of his prior offenses. Pro se and in his consolidated personal restraint petition, Mr. O'Connell argues that the court's jury instruction on voluntary intoxication was not supported by the evidence and that he had ineffective assistance of counsel. Because we find that he acknowledged the facts of his two prior offenses, that he proposed the jury instruction he now challenges, and that he had effective assistance of counsel, we affirm and dismiss the petition.

FACTS
¶ 3 Late one night in April 2001, Mr. O'Connell assaulted a woman acquaintance, pushed her out of her car, and drove off in her car with her purse. Relevant to these facts, he was later arrested and charged with first degree robbery and attempt to elude.[1] RCW 9A.56.190; RCW 46.61.024.
¶ 4 At trial, defense counsel argued that Mr. O'Connell did not have the ability to form the intent to commit first degree robbery on the night of the incident because he had been very intoxicated and had been abusing methamphetamine and crack cocaine for several days. The victim testified that Mr. O'Connell had appeared very agitated that night and made frequent, prolonged trips to the bathroom (suggesting drug use), but she did not think he appeared intoxicated. The defense offered the testimony of Dr. Scott Mabee, a psychologist, who stated that Mr. O'Connell was likely intoxicated at the time of the incident, due to his high level of drug dependency and his low level of mental functioning. Noting that Mr. O'Connell reported daily drug use for the past three years, Dr. Mabee opined that Mr. O'Connell had diminished mental processes due to substance intoxication.
¶ 5 The jury found Mr. O'Connell guilty as charged. He was sentenced for these convictions as well as for the second degree robbery and related eluding convictions from another trial. See note 1. Because first degree robbery is a most serious offense (former RCW 9.94A.030(25)(a); former RCW 9A.56.200), and because he had been convicted on two previous occasions of most serious offenses, the trial court imposed a life sentence without the possibility of early release.
¶ 6 Mr. O'Connell appealed his judgment and sentence to this court, which reversed the counts for second degree robbery and the related charge of eluding. State v. O'Connell, *352 noted at 116 Wash.App. 1010, 2003 WL 1018348 (2003). In June 2003, the sentencing court mistakenly resentenced Mr. O'Connell using an offender score that included the eluding conviction that was related to the dismissed second degree robbery conviction. On November 5, 2004, he was resentenced to life without the possibility of release. He filed an appeal of this judgment and sentence three days later. His personal restraint petition was filed on July 5, 2006.

DETERMINING DATES OF PRIOR OFFENSES
¶ 7 In this, his third appeal of his judgment and sentence, Mr. O'Connell challenges the trial court's imposition of a life sentence without possibility of release under the Persistent Offender Accountability Act (POAA), enacted by Laws of 1994, chapter 1, sections 1-3. We review the trial court's calculation of the offender score and sentence under the POAA de novo. State v. Rivers, 130 Wash.App. 689, 699, 128 P.3d 608 (2005), review denied, 158 Wash.2d 1008, 143 P.3d 829 (2006).
¶ 8 Finding that 50 percent of the criminals convicted in Washington were repeat offenders, the legislature enacted the POAA to improve public safety by placing the most dangerous repeat offenders in prison. Former RCW 9.94A.392 (1994). To that end, the POAA mandates the sentencing of three-time offenders of "most serious" crimes to prison for life without the possibility of parole. Former RCW 9.94A.392(2). "Most serious offenses" are defined in part as class A felonies and selected additional felonies. Former RCW 9.94A.030(25). Relevant to this case, a persistent offender is an offender who has been convicted of a most serious offense felony and who had been convicted on at least two separate occasions of most serious offenses. Former RCW 9.94A.030(29)(a)(i), (ii). Of these two or more previous convictions, "at least one conviction must have occurred before the commission of any of the other most serious offenses for which the offender was previously convicted." Former RCW 9.94A.030(29)(a)(ii).
¶ 9 Mr. O'Connell contends the trial court violated his Sixth Amendment right to a jury trial by determining that one of his prior most serious offense convictions occurred before the commission of another most serious offense. Citing Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and State v. Hughes, 154 Wash.2d 118, 110 P.3d 192 (2005), overruled in part on other grounds by Washington v. Recuenco, ___ U.S. ___, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006), he contends the dates of these prior offenses and convictions are questions of fact that had to be determined by a jury before he could be sentenced under the POAA. Apprendi established that any factother than the fact of a prior convictionthat increases a criminal penalty beyond the statutory maximum must be proved to a jury beyond a reasonable doubt. 530 U.S. at 490, 120 S.Ct. 2348. Mr. O'Connell contends it is not the fact of a prior conviction that is at issue here, but the dates of those prior offenses. Because those dates were not found by a jury beyond a reasonable doubt, he asserts, they violate the rule in Apprendi and its progeny.
¶ 10 The State urges this court to dismiss the appeal, asserting that this issue could have been, but was not, raised in an earlier appeal after Apprendi was decided. Blakely, however, clarified that the statutory maximum under Apprendi is the maximum a court may impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303, 124 S.Ct. 2531 (emphasis omitted). Because Blakely had not been decided before Mr. O'Connell's first two appeals, an appeal on this basis was not available then. Although this court generally will not address issues raised for the first time on appeal, an exception is made for alleged manifest errors affecting a constitutional right. RAP 2.5(a). A Blakely error implicates the Sixth Amendment right to a jury trial and is not harmless. Hughes, 154 Wash.2d at 148, 110 P.3d 192. Accordingly, it is properly considered for the first time on appeal.
¶ 11 In this case, however, Mr. O'Connell's Blakely issue is without merit. He contends the dates of his prior most serious crimes and convictions related to those crimes are issues of fact used to increase his penalty *353 beyond the statutory maximum, and therefore are facts that must be found by a jury beyond a reasonable doubt. His argument fails for two reasons.
¶ 12 First, there is some precedent for the conclusion that a POAA life sentence is neither an exceptional nor an enhanced sentence. In State v. Ball, 127 Wash.App. 956, 957, 959-60, 113 P.3d 520 (2005), review denied, 156 Wash.2d 1018, 132 P.3d 734 (2006), Division Two of this court held that Blakely did not apply to a sentence under the POAA because the statute does not pertain to departures from the sentencing guidelines and does not increase the penalty for the current offense. Instead, the POAA is itself a sentencing statute, designed to address recidivism. Id. at 960, 113 P.3d 520. As Ball notes, the Washington Supreme Court has not extended the rule in Apprendi to recidivism statutes, citing State v. Wheeler, 145 Wash.2d 116, 124, 34 P.3d 799 (2001). Ball, 127 Wash.App. at 960, 113 P.3d 520. Wheeler, 145 Wash.2d at 120, 34 P.3d 799, held that the POAA is constitutional and that convictions used to impose a POAA sentence need not be charged in the information, submitted to a jury, or proved beyond a reasonable doubt. Ball, 127 Wash.App. at 960, 113 P.3d 520.
¶ 13 Second, at a hearing to impose a POAA sentence, the trial court employs a preponderance of the evidence standard to the offender's prior offenses and convictions. Id. at 957, 113 P.3d 520; see also In re Pers. Restraint of Cadwallader, 155 Wash.2d 867, 876, 123 P.3d 456 (2005) (the State bears the burden of proving with a preponderance of the evidence the existence of prior convictions). As with any determination of an offender's criminal history, the sentencing court is entitled to rely on a stipulation or acknowledgment of facts and information related to prior convictions. Cadwallader, 155 Wash.2d at 873-74, 877, 123 P.3d 456; former RCW 9.94A.370(2) (1999). "Acknowledgement includes not objecting to information included in presentence reports." Cadwallader, 155 Wash.2d at 874, 123 P.3d 456; see also former RCW 9.94A.370(2).
¶ 14 Here, Mr. O'Connell acknowledged the two offenses that supported a life sentence under the POAA. The "Amended Understanding of Defendant's Criminal History" prepared by the prosecutor indicates that Mr. O'Connell was convicted on August 6, 1993 for a second degree robbery committed on March 24, 1993, and that he was convicted on December 9, 1994 for a second degree robbery committed on August 21, 1994. Clerk's Papers at 35. Both Mr. O'Connell and his counsel signed this document. By signing the criminal history and not objecting to the facts within, Mr. O'Connell acknowledged those facts. Cadwallader, 155 Wash.2d at 874, 123 P.3d 456. Second degree robbery is a most serious offense, former RCW 9.94A.030(25)(o), and the August 6, 1993 conviction occurred before the August 21, 1994 commission of the second offense. Consequently, the trial court properly found with a preponderance of the evidence that a POAA life sentence was mandated.
¶ 15 Mr. O'Connell additionally argues that the exception adopted in Apprendi for the "fact of a prior conviction" should be rejected. Apprendi, 530 U.S. at 490, 120 S.Ct. 2348. He contends the case cited in Apprendi allowing the trial court to determine criminal historyAlmendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)has been criticized by a majority of the United States Supreme Court and eroded in recent cases. Almendarez-Torres expressly held that prior convictions need not be proved to a jury. 523 U.S. at 247, 118 S.Ct. 1219. Later cases, including Apprendi, have indicated that the United States Supreme Court considers Almendarez-Torres incorrectly decided. State v. Smith, 150 Wash.2d 135, 141-42, 75 P.3d 934 (2003) (citing Apprendi, 530 U.S. at 489, 120 S.Ct. 2348; Ring v. Arizona, 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002)). As Smith notes, however, Almendarez-Torres has never been overruled. 150 Wash.2d at 142, 75 P.3d 934. Washington explicitly follows Almendarez-Torres and holds "that the federal constitution does not require that prior convictions be proved to a jury beyond a reasonable doubt." Id. at 143, 75 P.3d 934. This court is bound by the precedent recognized *354 in Smith, and must decline to reject the rule in Almendarez-Torres.

SUFFICIENCY OF THE EVIDENCE
¶ 16 Pro se, Mr. O'Connell contends the trial court erred in instructing the jury on voluntary intoxication. Defense counsel requested this instruction, however, based on the defense theory that Mr. O'Connell was unable to form the intent to commit the crimes either due to mental incapacity or voluntary intoxication at the time of the incident. Because he proposed the jury instruction he now challenges, he is barred by the invited error doctrine from claiming error on appeal. State v. Bradley, 141 Wash.2d 731, 736, 10 P.3d 358 (2000).

EFFECTIVE ASSISTANCE OF COUNSEL
¶ 17 In his personal restraint petition, Mr. O'Connell contends he had ineffective assistance of trial counsel. He argues that defense counsel (1) failed to investigate, interview, or call witnesses crucial to his defense; (2) requested an instruction on voluntary intoxication that was not supported by the evidence; and (3) failed to request lesser included instructions.
¶ 18 Because effective assistance of counsel in criminal proceedings is guaranteed by the sixth amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, Mr. O'Connell raises a constitutional challenge in his collateral attack. In re Pers. Restraint of Davis, 152 Wash.2d 647, 671-72, 101 P.3d 1 (2004). Accordingly, he must demonstrate by a preponderance of the evidence that he was actually and substantially prejudiced by the error. Id. To prove ineffective assistance of counsel, he must first show that defense counsel's representation fell below an objective standard of reasonableness. Id. at 672, 101 P.3d 1. Second, he must show that this deficient representation actually prejudiced him. Id. at 672-73, 101 P.3d 1. Failure to establish either one of these tests defeats his claim. Id. at 673, 101 P.3d 1. Judicial scrutiny of counsel's performance is highly deferential because there is a strong presumption of effectiveness. Id. at 721, 101 P.3d 1.
¶ 19 We first address the State's assertion that we should dismiss Mr. O'Connell's personal restraint petition as untimely. Under RCW 10.73.090(1), a petitioner may file a collateral attack on a criminal judgment and sentence up to one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court that had jurisdiction. The judgment becomes final either on the date it is filed with the clerk of the trial court or on the date the appellate court issues its mandate disposing of a direct appeal from the conviction, whichever comes last. RCW 10.73.090(3).
¶ 20 The State argues that Mr. O'Connell's conviction was upheld in his first appeal and that the mandate for that appeal was issued on April 16, 2003, more than a year before the personal restraint petition was filed on July 5, 2006. But the record shows that the mandate issued in April 2003 was for the appeal of the second degree robbery and attempt to elude convictions from a separate trial. See O'Connell, noted at 116 Wash.App. 1010, 2003 WL 1018348. These convictions were sentenced at the same time as the convictions for first degree robbery and attempt to elude that are the subjects of this appeal and personal restraint petition.
¶ 21 The convictions from both trials and their sentences were combined in one judgment and sentence that has been the springboard for three appeals. The first appeal was mandated when the second degree robbery and related attempt to elude were reversed and remanded (Court of Appeals Cause 20732-3-III). The second appeal was terminated with a "certificate of finality" by the court commissioner when the State agreed that the trial court had mistakenly resentenced Mr. O'Connell with the dismissed eluding conviction counted in his offender score (Court of Appeals Cause 22244-6-III). But the third appeal, of the first degree robbery and related attempt to elude, was timely filed within one month of the second resentencing. RAP 5.2(a). The mandate on this final appeal has not been issued, and Mr. O'Connell's personal restraint petition challenges the convictions from the trial that is the subject of this appeal. Accordingly, *355 his personal restraint petition is timely. RCW 10.73.090(3)(b).
¶ 22 I. Reasonable investigation. Mr. O'Connell appends several affidavits to his petition in support of his claim that defense counsel did not contact witnesses crucial to his defense. Generally a defense attorney has a duty to make reasonable investigations unless they are unnecessary to the defense theory. Davis, 152 Wash.2d at 721, 101 P.3d 1. At a minimum, defense counsel must conduct an investigation to determine the reasonable lines of defense. Id. Once a defense is selected, counsel's performance is not deficient if he or she fails to pursue alternative defenses. Id. at 722, 101 P.3d 1.
¶ 23 Mr. O'Connell admitted that he had taken his acquaintance's car, but claimed that he lacked the intent to rob her or to elude police because of diminished capacity and/or voluntary intoxication. The affidavits he presents are from family members and friends who allege that trial counsel would not return their calls and that they wanted to testify that Mr. O'Connell was a nice man who would not hurt or steal from anyone. His father declared that Mr. O'Connell was intoxicated on the night of the incident, a defense Mr. O'Connell is now rejecting. Considering the reasonable defense of incapacity chosen by trial counsel, the testimony of these witnesses would not have been necessary or particularly helpful. Even if these prospective witnesses could have described the state of Mr. O'Connell's mind at the time of the incident, their testimony would have been redundant. Both defense and State witnesses testified that Mr. O'Connell appeared agitated, spent long periods of time in the bathroom, and had a history of drug abuse. Further, if the family members and friends testified as to his good character, the prosecutor could have cross-examined them regarding their knowledge of his extensive criminal history. State v. Lord, 117 Wash.2d 829, 891-92, 822 P.2d 177 (1991). Mr. O'Connell fails to show that trial counsel's investigation was inadequate or that it prejudiced his defense.
¶ 24 II. Voluntary intoxication defense. Defense counsel argued that Mr. O'Connell was either intoxicated on the night of the incident or was incapacitated due to longterm drug abuse. Mr. O'Connell now contends this defense was confusing and the jury could have thrown out the diminished capacity defense if it did not believe he was intoxicated. The record simply does not indicate that these two aspects of the defense based on lack of intent were difficult to separate.
¶ 25 Voluntary intoxication is a subset of the general defense of diminished capacity. State v. Eakins, 127 Wash.2d 490, 498, 902 P.2d 1236 (1995). The defense is effective when the defendant can show that the crime charged has as an element a particular mental state, that he or she had been drinking or consuming drugs, and that the consumption affected his or her ability to acquire the required mental state. State v. Gabryschak, 83 Wash.App. 249, 252, 921 P.2d 549 (1996). To show diminished capacity, the defendant must produce expert testimony demonstrating he or she suffered from a mental condition that impaired his or her ability to form the requisite specific intent. State v. Turner, 143 Wash.2d 715, 730, 23 P.3d 499 (2001); Eakins, 127 Wash.2d at 502, 902 P.2d 1236. As noted by the State, the jury could have rejected the diminished capacity defense due to the lack of a mental condition, yet could have accepted the witnesses' testimony that Mr. O'Connell was intoxicated at the time of the incident. Defense counsel discussed both theories in closing argument, and the jury addressed separate instructions on the defenses. Mr. O'Connell shows neither an unreasonable defense strategy nor prejudice.
¶ 26 III. Lesser included offenses. Finally, Mr. O'Connell contends trial counsel unreasonably failed to request instructions on lesser included offenses. It is true that a defendant has a right to have lesser included offenses presented to the jury. RCW 10.61.006; State v. Stevens, 158 Wash.2d 304, 310, 143 P.3d 817 (2006). A lesser included offense instruction is justified if (1) all the elements of the lesser offense are necessary elements of the charged offense (the legal prong), and (2) the evidence *356 supports an inference that the lesser crime was committed (the factual prong). Stevens, 158 Wash.2d at 310, 143 P.3d 817. To prove ineffective assistance of counsel, Mr. O'Connell must show that trial counsel unreasonably and prejudicially pursued an "all or nothing" defense against the charged crimes rather than propose lesser included instructions. Compare State v. Ward, 125 Wash. App. 243, 250, 104 P.3d 670 (2004) (all or nothing defense unreasonable when it exposes the defendant to an unreasonable risk that the jury will convict on the only option presented) with State v. Hoffman, 116 Wash.2d 51, 112-13, 804 P.2d 577 (1991) (foregoing a lesser included offense instruction may be a legitimate trial strategy).
¶ 27 Mr. O'Connell argues that defense counsel should have proposed an instruction on first degree theft as a lesser included offense of first degree robbery. First degree theft is defined as wrongfully taking property or services from the person of another with intent to deprive him or her of such property or services. RCW 9A.56.020(1)(a), .030. A person commits first degree robbery when he or she "unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person." RCW 9A.56.190. "Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking." Id. Any force or threat, even slight, is sufficient to sustain a robbery conviction. State v. Handburgh, 119 Wash.2d 284, 293, 830 P.2d 641 (1992).
¶ 28 Although Mr. O'Connell contends he was entitled to instruct the jury on first degree theft, the record does not support the factual prong of this lesser included offense. His victim testified that Mr. O'Connell threatened to rape and kill her, fought with her, pushed her out of her car, and then hit her arm when he backed up the car. Even if the defense had been successful in discrediting her testimony, an officer testified that she had obvious injuries. Because the record shows both use and threatened use of violence, first degree theft is not a justified lesser included offense. Trial counsel's failure to propose such an instruction was a legitimate trial strategy and was not prejudicial. State v. King, 24 Wash.App. 495, 498-99, 601 P.2d 982 (1979).
¶ 29 Finally, Mr. O'Connell contends trial counsel should have proposed an instruction on reckless driving as a lesser included offense of attempting to elude a police vehicle. Former RCW 46.61.024 (1983), the attempt to elude statute, states that "[a]ny driver of a motor vehicle who wilfully fails or refuses to immediately bring his vehicle to a stop and who drives his vehicle in a manner indicating a wanton or wilful disregard for the lives or property of others while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony." Reckless driving, a misdemeanor, involves driving a vehicle in "willful or wanton disregard for the safety of persons or property." RCW 46.61.500(1). Both statutes require a willful or wanton disregard for the safety of others. Thus, it is impossible to violate the eluding statute without violating the reckless driving statute, and reckless driving is a lesser included offense of eluding. See State v. Parker, 102 Wash.2d 161, 164-65, 683 P.2d 189 (1984) (discussing former RCW 46.61.024 (1979)).
¶ 30 Additional mental elements for attempting to elude, however, are willful failure to stop and attempting to elude a pursuing police vehicle. RCW 46.61.024; Parker, 102 Wash.2d at 165, 683 P.2d 189. Mr. O'Connell offered no evidence at trial to rebut the State's evidence that he began speeding when the marked police car that first followed him turned on its lights. Eventually, more than one police vehicle pursued him. An officer testified that Mr. O'Connell reached speeds of 70 to 80 miles per hour as he swerved around corners and drove west on Sprague Avenue toward downtown Spokane. Considering the strength of this unrebutted evidence for refusal to stop, the record does not support the factual prong for a lesser included offense instruction on reckless driving. Stevens, 158 Wash.2d at 310, 143 P.3d 817. Accordingly, defense counsel's failure to propose such an instruction was *357 neither unreasonable nor prejudicial. Davis, 152 Wash.2d at 673, 101 P.3d 1.
¶ 31 Affirmed; personal restraint petition dismissed.
WE CONCUR: SWEENEY, C.J., and BROWN, J.
NOTES
[1] Mr. O'Connell was charged in the same information with four additional counts related to an earlier purse snatching and a later robbery. A separate trial was held on the purse snatching counts, and a jury found him guilty of second degree robbery and eluding. The remaining two counts were dismissed. This court reversed the second degree robbery and related eluding convictions in State v. O'Connell, noted at 116 Wash. App. 1010, 2003 WL 1018348 (2003).