# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69525-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RENEE CHRISTINE BISHOP-MCKEAN , | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED:  March 10, 2014 |
| | ) | |

VERELLEN, J. — Renee Bishop-McKean appeals from the judgment and sentence entered on the jury verdict finding her guilty of attempted first degree murder.  She contends that the trial court erred by denying her motion to represent herself at trial.  But the record amply demonstrates that Bishop-McKean never made an unequivocal request to represent herself.  In an extensive colloquy with the trial court, she explained that she was frustrated by delays in starting trial, but preferred to proceed with appointed counsel.  Under these circumstances, the trial court's denial of the motion was a sound exercise of its discretion, and furnishes no basis for appellate relief.  Other issues Bishop-McKean raises are without merit.  We affirm.

## FACTS

Bishop-McKean was charged with one count of attempted first degree murder and one count of first degree assault.

The court granted Bishop-McKean's motion for a stay in the proceedings to allow an evaluation of her competency.  After a 15-day evaluation period at a state psychiatric

hospital, the court concluded Bishop-McKean was not competent to stand trial. It entered an order to commit her for 90 days to restore her competency. On February 28, 2012, the court found Bishop-McKean competent to stand trial and set a trial date of April 6.

On March 30, Bishop-McKean requested substitute counsel. She explained, in response to questioning by the court, that she was asking for a new attorney, not asking to represent herself. Gurjit Pandher was appointed to represent her.

At trial call on Friday, April 6, Pandher told the court that he needed a continuance to effectively represent Bishop-McKean. He also told the court that Bishop-McKean wanted to represent herself, and that she believed that she would be ready for trial the following Monday, April 9.

Snohomish County Superior Court Judge Michael Downes conducted a limited colloquy, inquiring as to Bishop-McKean's age, education, courtroom experience, experience with the rules of evidence and criminal procedure, and understanding of the potential penalties applicable to the offense. Judge Downes determined that a more thorough inquiry was required, but he was unable to perform an adequate inquiry at that time because he was presiding over the trial call calendar. Instead, Judge Downes assigned consideration of Bishop-McKean's motion to Judge Eric Lucas, who was immediately available to complete the colloquy. Judge Lucas resumed the hearing that same day.

In response to Judge Lucas's questioning, Bishop-McKean explained that she was ready to go to trial the following Monday, but that she "would like to reserve Mr. Pandher . . . [i]n case I get cold feet."[1] After further inquiry by Judge Lucas, Bishop-

---

[1] Report of Proceedings (RP) (Apr. 6, 2012) at 8-9.

McKean clarified that her objective was to proceed to trial as quickly as possible, and that she was frustrated with her counsel:

> Six months I have been in jail for a crime I didn't commit with ineffective counsel, and it has been horrible. Now the Court and prosecution is asking me to start all over again, and I refuse to do that. I would much rather represent myself with the outcome I perceive it to be and what I wish to happen. I would have better luck if I do it myself rather than someone else who doesn't care and is unavailable and ineffective.[2]

Bishop-McKean also explained that she had no dissatisfaction with her present counsel, Pandher, except that she opposed his request for a continuance until June and she did not want to remain in jail for that time awaiting trial.

In response to the court's questioning, Bishop-McKean then specified that she did not want to represent herself, but only wanted her trial to be held as soon as possible:

COURT: So is that the real problem, the June request?

DEFENDANT: Yes, sir. Your jail is just too hard. It's too difficult. People would rather be in prison or dead than be in your jail.

COURT: *Okay. So it sounds to me like that really the problem is not that you want to be pro se and that you want a new attorney. The problem is you just want to go to trial.*

DEFENDANT: *Yes.*

COURT: What do you think is a more reasonable time?

. . . .

DEFENDANT: Sooner. April 30 when the trial date starts. Within the confines of my 60-day trial rights is what I'm hoping for.

COURT: Okay. So if the case was continued . . . to April 27, then under those circumstances, you would be happy with Mr. Pandher and be ready to proceed?

---

[2] RP (Apr. 6, 2012) at 14-15.

3

DEFENDANT: Absolutely.

. . . .

COURT: Do you think it might be helpful before you make a final decision on going pro se to meet with [Pandher] and talk with him about the case?

DEFENDANT: That would be a pretty good idea, absolutely.[3]

Based on this colloquy, the court denied Bishop-McKean's motion to represent herself, without prejudice to renew. The court continued the trial for two weeks to allow Bishop-McKean to confer with her counsel and to decide whether she wanted to represent herself. She did not thereafter renew her request to represent herself.

Following trial, Bishop-McKean was found guilty of attempted first degree murder and first degree assault with a deadly weapon. Bishop-McKean appeals.

## ANALYSIS

Bishop-McKean contends that the trial court violated her constitutional right to represent herself. We disagree.

The federal and state constitutions guarantee a defendant the right to self-representation.[4] To exercise the right, the defendant must make an unequivocal, knowing, intelligent, and timely request.[5] A cursory or routine inquiry is insufficient:

"[A] judge must investigate as long and as thoroughly as the circumstances . . . demand. The fact that an accused may tell him that he

---

[3] RP (Apr. 6, 2012) at 15-17 (emphasis added).

[4] U.S. CONST. amends. VI, XIV; WASH. CONST., art. I, § 22; see also Faretta v. California, 422 U.S. 806, 828-19, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975).

[5] State v. DeWeese, 117 Wn.2d 369, 377, 816 P.2d 1 (1991).

4

is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility."[6]

A trial court's denial of a request for self-representation is reviewed for abuse of discretion.[7] Discretion is abused when the decision is "manifestly unreasonable or 'rests on facts unsupported in the record or was reached by applying the wrong legal standard.'"[8]

Bishop-McKean contends that she "made a pretrial unequivocal request to represent herself that was not coupled with a request for a continuance of the trial."[9] She contends that the "trial court delayed ruling on her unequivocal request," and transferred it "to another judge, who in turn denied it."[10] These contentions are not accurate.

Despite the fact that Bishop-McKean's motion was raised without advance notice on the eve of trial, the judge presiding over the trial call calendar sought to ascertain whether her request was an informed and unequivocal waiver of her right to be represented by counsel. The colloquy Judge Downes conducted included questions similar to those outlined by the court in its sample colloquy in State v. Christensen and approved in subsequent cases.[11] Given the time constraints of the trial call calendar, Judge Downes was unable to determine whether Bishop-McKean's request was an

---

[6] Bellevue v. Acrey, 103 Wn.2d 203, 210, 691 P.2d 957 (1984) (alteration in original) (quoting Von Moltke v. Gillies, 332 U.S. 708, 723-24, 68 S. Ct. 316, 92 L. Ed. 2d 309 (1948)).

[7] State v. Breedlove, 79 Wn. App. 101, 106, 900 P.2d 586 (1995).

[8] State v. Madsen, 168 Wn.2d 496, 504, 229 P.3d 714 (2010) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

[9] Appellant's Br. at 1.

[10] Appellant's Br. at 1.

[11] 40 Wn. App. 290, 295 n.2, 698 P.2d 1069 (1985); see also State v. Vermillion, 112 Wn. App. 844, 858 n.3, 51 P.3d 188 (2002).

intelligent and unequivocal waiver. It was entirely appropriate, in these circumstances, for Judge Downes to decide that further questioning was appropriate and to ensure that Bishop-McKean's motion was promptly heard by Judge Lucas that same day.

Bishop-McKean's remarks to Judge Lucas demonstrate that, in fact, she did not seek to represent herself. Bishop-McKean clearly explained that she would prefer to receive the assistance of her attorney, provided that she obtain a prompt trial date.

Significantly, Bishop-McKean agreed that she wanted to confer with her counsel, and Judge Lucas denied her motion without prejudice to renew, so that she could, in fact, confer with her attorney. Under these circumstances, Judge Lucas had a tenable reason to deny the motion. The fact that Bishop-McKean never raised the issue again and proceeded through trial represented by counsel strongly supports the inference that she never intelligently and unequivocally asserted her right to self-representation at that time, or afterward.

Bishop-McKean subsequently filed a bar grievance against Pandher, causing him to withdraw from representation. Kenneth Lee was then appointed by the court to represent her. She did not object to the appointment of Lee, and agreed to a continuance to allow him to prepare for trial. These circumstances, likewise, do not support Bishop-McKean's argument that she unequivocally asserted the right to self-representation.

Bishop-McKean argues that she was entitled to represent herself as a matter of law, citing State v. Barker[12] and State v. Vermillion.[13] But the facts in Barker and

---

[12] 75 Wn. App. 236, 881 P.2d 1051 (1994).
[13] 112 Wn. App. 844, 51 P.3d 188 (2002).

Vermillion are distinguishable from the circumstances here.

In Barker, the defendant requested to represent himself on the eve of trial after unsuccessfully seeking appointment of new counsel.[14] Unlike the circumstances here, however, the judge engaged in no colloquy with Barker and merely informed Barker that his request was not timely.[15] In Barker, unlike here, the trial court did not analyze the facts and circumstances of the case and failed to exercise any discretion whatsoever.[16]

In Vermillion, the defendant made five requests to represent himself, expressed no hesitation, and understood the consequences of self-representation, having previously represented himself in another case.[17] The trial court denied the requests after concluding that self-representation was not in the defendant's best interest.[18] This court found such action to be an abuse of discretion, stating that the purpose of the colloquy is to determine if the defendant understands the risks involved in self-representation, not whether he has the technical skill to represent himself.[19]

Here, by contrast, two judges conducted an extensive colloquy, revealing that Bishop-McKean's request was equivocal, at best. Judge Lucas in particular analyzed Bishop-McKean's request based on a consideration of all of the circumstances and on her responses during the colloquy. Bishop-McKean ultimately decided to proceed to trial with the assistance of counsel and never again asserted the desire to represent

---

[14] Barker, 75 Wn. App. at 238.

[15] Id. at 239-40.

[16] Id.

[17] Vermillion, 112 Wn. App. at 852-57.

[18] Id. at 857.

[19] Id.

herself. Her earlier request for self-representation was equivocal. There was no abuse of discretion.

Bishop-McKean raises numerous issues in her statement of additional grounds for review. None have merit. She identifies alleged discrepancies or falsehoods in witness trial testimony, makes conclusory arguments that remarks by witnesses and attorneys at trial were prejudicial to her, and claims ineffective assistance of counsel based on matters outside the record on appeal. Her contentions that much of the evidence at trial was inadmissible are based on inapplicable legal standards, minimal analysis, and conclusory statements about the historical facts of the case that are not supported by the record.[20] Some of the arguments made are incomprehensible. Her complaints about jail conditions also involve matters outside the record on appeal.[21]

Affirmed.

WE CONCUR:

_____

_____

_____

---

[20] State v. Bugai, 30 Wn. App. 156, 158, 632 P.2d 917 (1981); State v. King, 24 Wn. App. 495, 505, 601 P.2d 982 (1979).

[21] See Bugai, 30 Wn. App. at 156; King, 24 Wn. App. at 505.