FILED
COURT OF APPEALS
DIVISION II

2014 MAR 25 AM 8: 52

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43887-9-II |
| Respondent, | |
| v. | |
| CORY STEVEN WILLIAMS, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — Following a bench trial, the trial court found Cory S. Williams guilty of custodial assault. Williams appeals his conviction, asserting that (1) the trial court violated his jury trial right when it accepted his jury trial waiver without performing an adequate on-the-record colloquy to determine whether the waiver was knowingly, intelligently, and voluntarily given; and (2) his counsel was ineffective for failing to assert an affirmative self-defense claim. In his statement of additional grounds for review (SAG), Williams raises a number of claims that we cannot address because they either ask us to reweigh the evidence and evaluate the credibility of witnesses or refer to matters outside the trial record. We affirm.

## FACTS

Williams was a juvenile offender housed in the Cougar Lodge unit of Naselle Youth Camp, a Washington State juvenile corrections facility. On December 19, 2011, Program Manager Janet Darcher ordered residents to their rooms after observing disruptive behavior in the unit. After a staff member informed Darcher that Williams was upset, she went to Williams's room and saw that he was getting "angrier and angrier" while pacing around the

room with his shirt off. Report of Proceedings (RP) (Aug. 15, 2012) at 66. Darcher called for backup to assist with Williams. Staff members Michael Ennis and Alan Gregory responded to Darcher's call and went to Williams's room to remove him to an isolation room.

When they arrived, Ennis saw Williams pacing around his room with his shirt off. Ennis said to Williams, "Cory, it looks like you're ready to fight," to which Williams responded, "I'm not going to go." RP (Aug. 15, 2012) at 37. After giving Williams several minutes to comply with commands to voluntarily submit to restraints, Ennis attempted to physically restrain Williams. When Ennis attempted to restrain Williams, Williams grabbed Ennis's testicles and started squeezing for approximately 30 seconds. Ennis yelled, "He's got me by the balls. Get him off me." RP (Aug. 15, 2012) at 28. At some point during the struggle, Ennis also yelled, "Get him off. Get him off. I'm going to [expletive] kill him. Get him off me." RP (Aug. 15, 2012) at 29.

Williams eventually released his hold on Ennis. Darcher and Gregory then restrained Williams and directed him to the isolation room. On July 6, 2012, the State charged Williams by amended information with one count of custodial assault.

On August 10, 2012, Williams signed a jury trial waiver that stated the following:

The undersigned defendant states that:

1. I have been informed and fully understand that I have the right to have my case heard by an impartial jury selected from the county where the crime(s) is alleged to have been committed;

2. I have consulted with my lawyer regarding the decision to have my case tried by a jury or by the court;

3. I freely and voluntarily give up my right to be tried by a jury and request trial by the court.

Clerk's Papers (CP) at 24.

That same day, the trial court held a hearing to address Williams's jury trial waiver, at which the following discussion took place:

> [Trial court]: [Defense counsel], please cover the Waiver of Jury Trial and then if I have any questions or the Prosecutor wants me to ask any questions, I'll cover those.
>
> [Defense counsel]: Yes. Your Honor, the Waiver of Jury Trial which is dated today has my signature; it has Mr. William[s]'s signature. I was over at Green Hill about—about two hours ago. I was sitting in the conference room with my investigator and Mr. Williams so we went over it in person. I reviewed the Waiver of Jury Trial form with him and we discussed the—the reasoning behind doing so and the rights that he had and was giving up and we're giving up by signing the Waiver. So we had plenty of time, I believe, to talk about it and he had an opportunity to answer—to ask me any questions and I answered them so unless Mr. Williams has any further questions about that form that he signed, it's my opinion that it's a knowing, intelligent, and voluntary Waiver of Jury Trial.
>
> [Trial court]: Mr. Williams, this is Judge Sullivan. Good afternoon, sir.
>
> [Williams]: Good afternoon.
>
> [Trial court]: Mr. Williams, did you hear—do you agree with what your attorney just said?
>
> [Williams]: Yes.
>
> [Trial court]: Were you able to hear everything?
>
> [Williams]: Yes.
>
> . . . .
>
> [Trial court]: Okay. And you signed this Waiver of Jury Trial today; is that correct?
>
> [Williams]: Yes, Your Honor.
>
> [Trial court]: Did you sign it only after you had enough time to review it with your attorney so you knew what in the world you were signing?
>
> [Williams]: Yes, sir.

RP (Aug. 10, 2012) at 2-4. The trial court accepted Williams's jury trial waiver, and a bench trial commenced on August 15.

At trial, Williams testified that he became frustrated and upset after being ordered to his room. Williams admitted that he was yelling in his room and banging on his door when a staff member called for backup. Williams also admitted that he took off his shirt to prepare for any

physical altercation with staff. Williams stated that Ennis had asked him to "just walk to the quiet room," but that he "refused" Ennis's request. RP (Aug. 15, 2012) at 79. According to Williams, Ennis then grabbed his neck and head in a manner that caused him to have trouble breathing. Williams stated that when he reached out to push Ennis off of him, he heard Ennis yell, "He's got my balls." RP (Aug. 15, 2012) at 80. Williams claimed that he did not intend to grab Ennis's testicles and did not intend to harm Ennis. On cross-examination, Williams testified that Ennis had been polite and professional when asking him to voluntarily walk to the isolation room.

The trial court found Williams guilty of custodial assault. Williams timely appeals his conviction.

## ANALYSIS

### I. JURY TRIAL WAIVER

Williams first asserts that the trial court erred by accepting his jury trial waiver without performing an adequate on-the-record colloquy to determine whether Williams had knowingly, intelligently, and voluntarily waived his jury trial right. Specifically, Williams argues that we must reverse his conviction and remand for a jury trial because the trial court's colloquy was not sufficient to determine whether he was specifically advised about his state constitutional right to a unanimous jury verdict. We disagree.

We review the validity of a jury trial waiver de novo. *State v. Ramirez-Dominguez*, 140 Wn. App. 233, 239, 165 P.3d 391 (2007). A defendant's waiver of his or her jury trial right must be made knowingly, intelligently, voluntarily, and without improper influences. *State v. Stegall*, 124 Wn.2d 719, 724-25, 881 P.2d 979 (1994). A written jury trial waiver "is strong evidence

4

that the defendant validly waived the jury trial right." *State v. Pierce*, 134 Wn. App. 763, 771, 142 P.3d 610 (2006). "An attorney's representation that the defendant's waiver is knowing, intelligent, and voluntary is also relevant" to a determination of whether the defendant's jury trial waiver was valid. *State v. Benitez*, 175 Wn. App. 116, 128, 302 P.3d 877 (2013) (citing *Pierce*, 134 Wn. App. at 771). Additionally, we consider whether the trial court informed the defendant of his or her jury trial right. *Pierce*, 134 Wn. App. at 771.

Washington law requires that a defendant personally express a waiver of his or her jury trial right in order for the waiver to be valid. *Pierce*, 134 Wn. App. at 771. But Washington law does not require the trial court to conduct an extensive on-the-record colloquy with the defendant prior to finding that the defendant validly waived his or her jury trial right. *Pierce*, 134 Wn. App. at 771. "As a result, the right to a jury trial is easier to waive than other constitutional rights." *Benitez*, 175 Wn. App. at 129.

Williams argues that the trial court was required to conduct a more extensive colloquy before it could find that he validly waived his jury trial right because his written jury trial waiver did not fully inform him of his state constitutional right to a unanimous jury verdict. But we have repeatedly held that an extensive on-the-record colloquy is not required prior to accepting a defendant's jury trial waiver. *See, e.g., Pierce*, 134 Wn. App. at 771; *Benitez*, 175 Wn. App. at 128-29. And our supreme court has held that a trial court need not conduct an on-the-record colloquy to advise a defendant seeking to waive his jury trial right about the specific consequences of waiving a jury trial before accepting the defendant's waiver, rather, "all that is required is a personal expression of waiver from the defendant." *Stegall*, 124 Wn.2d at 725.

Here, Williams signed and submitted a written jury trial waiver that stated he (1) was informed of his jury trial right, (2) consulted with his attorney about the decision to waive his jury trial right, and (3) "freely and voluntarily" waived his jury trial right. Additionally, defense counsel stated to the trial court that he had reviewed the jury trial waiver form with Williams, discussed with Williams the reasons for waiving a jury trial, and believed that Williams had "knowing[ly], intelligent[ly], and voluntar[ily]" waived his jury trial right. RP (Aug. 10, 2012) at 3. And the trial court confirmed with Williams that he had signed the waiver form and that he agreed with defense counsel's statements regarding his jury trial waiver. This was adequate to show that Williams personally expressed his desire to waive his jury trial right and, thus, we hold that the trial court did not err by accepting the waiver without conducting a more extensive on-the-record colloquy with Williams.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Williams asserts that his defense counsel was ineffective for failing to assert a claim of self-defense. Again, we disagree.

We review ineffective assistance of counsel claims de novo. *State v. Binh Thach*, 126 Wn. App. 297, 319, 106 P.3d 782 (2005). To prevail on an ineffective assistance of counsel claim, Williams must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Brockob*, 159 Wn.2d 311, 344-45, 150 P.3d 59 (2006). Performance is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If a defendant fails to establish either prong of the ineffective assistance of counsel test, we need

not inquire further. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). Defense counsel does not render deficient performance by failing to request a jury instruction unsupported by the evidence. *See State v. Staley*, 123 Wn.2d 794, 803, 872 P.2d 502 (1994) (defendant is entitled to jury instructions if they are supported by the evidence); *State v. King*, 24 Wn. App. 495, 501, 601 P.2d 982 (1979) (counsel not required to argue self-defense where the defense is not warranted by the facts).

Generally, a defendant alleging self-defense must produce some evidence of circumstances amounting to self-defense. *State v. Riley*, 137 Wn.2d 904, 909, 976 P.2d 624 (1999). But where the defendant asserts self-defense in connection with an alleged custodial assault, he or she must produce some evidence that he or she was in actual, imminent danger of serious injury or death. *See State v. Bradley*, 141 Wn.2d 731, 737-38, 10 P.3d 358 (2000).[1] The requirement that a defendant produce evidence that he or she was "in actual, imminent danger of serious injury or death" before asserting a self-defense claim in a prosecution for custodial assault applies equally to custodial assaults alleged to have been committed in a juvenile corrections institution. *State v. Garcia*, 107 Wn. App. 545, 548, 27 P.3d 1225 (2001). When determining whether the evidence at trial was sufficient to support a self-defense instruction, we view the evidence in the light most favorable to the defendant. *See State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000). ("When determining if the evidence at trial was sufficient to support the giving of an instruction, the appellate court is to view the supporting evidence in the light most favorable to the party that requested the instruction.").

---

[1] Williams does not address this heightened requirement for self-defense claims in the context of a custodial assault prosecution.

Viewing the evidence in a light most favorable to Williams, there is no evidence in the record to support his claim of self-defense. Although Williams testified that Ennis had restrained him in a manner that caused him to have trouble breathing, he presented no evidence that the restraint placed him "in actual, imminent danger of serious injury or death." *Garcia*, 107 Wn. App. 548. Because Williams would not have been entitled to a self-defense instruction had defense counsel requested one, his counsel's performance was not deficient and, thus, he fails to demonstrate ineffective assistance of counsel.

### III. SAG

In his SAG, Williams first asserts that he was unfairly targeted by juvenile corrections staff because he was the only African American individual in the unit. But there is no evidence in the record supporting this assertion and, thus, we decline to address it. *See McFarland*, 127 Wn.2d at 335 (reviewing courts do not consider matters outside the record in a direct appeal). Williams also asserts (1) that his defense counsel advised him to waive his jury trial right because Pacific County residents are racist and (2) that defense counsel failed to tell him that a jury had to be unanimous to convict him. Again, Williams's assertions refer to matters outside the trial record and, thus, we do not address them further.

Next, Williams asserts that it is implausible that he would have been able to clench Ennis's testicles for a full 30 seconds while other staff members were present to assist Ennis. He also appears to argue that witnesses against him presented false testimony at his trial. But we do not address these assertions because they ask us to reweigh the evidence and to evaluate the credibility of witnesses. *See State v. Walton*, 64 Wn. App. 410, 515-16, 824 P.2d 533 (1992)

No. 43887-9-II

(Appellate courts defer to the trier of fact on issues of conflicting testimony, witness credibility, and the weight of evidence.).

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, C.J.

We concur:

Johanson, J.

Lee, J.

9