[Nos. 12985-0-II; 13899-9-II.   Division Two.   February 10, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTOPHER DYLAN HARPER, *Appellant.*

*In the Matter of the Personal Restraint of* CHRISTOPHER DYLAN HARPER, *Petitioner.*

*John Henry Browne* and *Browne, Ressler & Jones,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Pamela B. Loginsky* and *Dianne F. Russell, Deputies,* for respondent.

PETRICH, C.J. — Christopher Harper appeals from his conviction of attempted premeditated murder, asserting ineffective assistance of counsel for failure to present relevant evidence in support of a diminished capacity defense. In a consolidated personal restraint petition, he contends that vacation of his conviction is warranted under RAP 16.4(c)(2) and (3) because of ineffective assistance of counsel and because previously unheard material facts directly support his diminished capacity defense. We affirm the conviction and dismiss the petition.

While walking to school, 18-year-old Christopher Harper passed a 15-year-old girl also walking to school. Harper grabbed her and pulled her onto a trail immediately off the road on which they walked. The two engaged in a physical struggle in which the girl successfully fought off Harper's efforts to stuff a sock and a necktie into her mouth. During the 10- to 15-minute struggle, Harper cut the girl across the throat at least three times with the box knife he used as a box boy at Albertson's. Before he cut her, Harper said "You're mine now, and I'm not going to let you go, and if you don't settle down I'll cut you." When she asked him to let her go, Harper said, "No, I have to wait until you die." Harper then stopped fighting her and said, "I am going to take you home, but I hope my parents will forgive me."

Harper then walked the girl home without making any further attempts to hurt her. He stood outside the door while she went inside. When her mother opened the door, Harper said, "I don't know what I did or how I did it." Harper remained at the girl's house, sobbing and crying, until the police arrived. He accompanied the officers to the crime scene and described to them what he had done. The girl survived the attack despite cuts exposing her trachea and a loss of one-third of her blood. Deputy Mandeville testified that Harper admitted that he intended to rape her, but said he didn't intend to assault her in that manner or to use the box knife. Deputy Magerstaedt testified that Harper said that he only intended to rape the victim, not cut her. Detective Wright testified that Harper said that he did not intend to hurt the victim.

The State charged Harper with attempted premeditated first degree murder, attempted felony murder, and assault in the first degree. Harper waived his right to a jury. After a trial to the bench, the court dismissed the attempted felony murder charge, but found him guilty of the other two counts. The assault conviction was arrested because it merged into the attempted murder conviction. The court sentenced Harper to 200 months in prison and recommended that he receive sexual counseling.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ The Washington State and United States Constitutions guarantee a criminal defendant the right to effective assistance of counsel. Const. art. 1, § 22 (amend. 10); U.S. Const. amend. 14, § 1. The test for ineffective assistance of counsel has two parts. One, it must be shown that the defense counsel's conduct was deficient, *i.e.*, that it fell below an objective standard of reasonableness. Two, it must be shown that such conduct prejudiced the defendant, *i.e.*, that there is a reasonable possibility that, but for the deficient conduct, the outcome of the proceeding would have been different. *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (adopted test from *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)).

■ ■ This court presumes that the assistance was effective. *State v. Sardinia*, 42 Wn. App. 533, 539, 713 P.2d 122, *review denied*, 105 Wn.2d 1013 (1986). Generally, a court will not consider those matters it regards as tactical decisions or matters of trial strategy. *State v. Carter*, 56 Wn. App. 217, 224, 783 P.2d 589 (1989). "If defense counsel's trial conduct can be characterized as legitimate trial strategy or tactics, then it cannot serve as a basis for a claim that the defendant did not receive effective assistance of counsel." *State v. Mak*, 105 Wn.2d 692, 731, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986), *sentence vacated on writ of habeas corpus sub nom. Mak v. Blodgett*, 754 F. Supp. 1490 (W.D. Wash.), *appeal docketed*, Nos. 95-35615, 91-35256 (9th Cir. July 9, 1991); *State v. Adams*, 91 Wn.2d 86, 90-91, 586 P.2d 1168 (1978); *State v. White*, 81 Wn.2d 223, 225, 500 P.2d 1242 (1972).

Harper claims that his attorney asserted a diminished capacity defense in his arguments,[1] but the only evidence he presented was the expert testimony of Dr. Marra that described Harper as an "anger rapist".[2] As the charges

---

[1]"As I see this case it's an issue of premeditation. Was there premeditated intent to cause the death of the victim of this crime. Dr. Marra's testimony goes directly to the heart of the issue of whether or not Chris was able to form a premeditated intent. The cases cited by the prosecution refer to cases that deal with diminished capacity. *There's not a claim of diminished capacity*, there's a claim of a personality disorder which is recognized in the psychological and psychiatric community . . .

"Dr. Marra testified that an anger rapist acts on impulse, that he does so without pre-planning, that he uses those items that are available . . .

". . . when he finally realized what was going on he stopped. And I think that's important because I think that shows he was not premeditating." (Italics ours.)

[2]According to Dr. Marra, "an anger rapist is somebody who has had rejection by women, or girls, who is sensitive to this rejection, who has difficulty expressing anger, almost angerphobic to where it isn't someone who has daily bouts of temper, but keeps it all in.

"The anger rapist usually attempts or rapes someone who is an innocent bystander, or stranger, or someone who just happens to be in the area where his assault or his rage is triggered. It's usually in most all cases a very impulsive spontaneous immediate act where the stupidity of the crime as far as the ability to cover up is small. They're almost always apprehended because there

against Harper did not include rape or the intent to rape, the court found the testimony irrelevant. Therefore, Harper contends that he was left defenseless, and that this conduct fell below the objective standard of reasonableness.

Harper also claims that his attorney did not act competently because he presented Dr. Marra's testimony, knowing that it did not meet the requirements for allowing expert testimony regarding a defendant's ability to form a specific intent, *i.e.*, diminished capacity. These requirements are:

1. The defendant lacked the ability to form a specific intent due to a mental disorder not amounting to insanity.

2. The expert is qualified to testify on the subject.

3. The expert personally examines and diagnoses the defendant and is able to testify to an opinion with reasonable medical certainty.

4. The expert's testimony is based on substantial supporting evidence in the record relating to the defendant and the case, or there must be an offer to prove such evidence. The supporting evidence must accurately reflect the record and cannot consist solely of uncertain estimates or speculation.

5. The cause of the inability to form a specific intent must be a mental disorder, not emotions like jealousy, fear, anger, and hatred.

6. The mental disorder must be causally connected to a lack of specific intent, not just reduced perception, overreaction or other irrelevant mental states.

7. The inability to form a specific intent must occur at a time relevant to the offense.

8. The mental disorder must substantially reduce the probability that the defendant formed the alleged intent.

9. The lack of specific intent may not be inferred from evidence of the mental disorder, and it is insufficient to only give conclusory testimony that a mental disorder caused an inability to form specific intent. The opinion must contain an explanation of how the mental disorder had this effect.

(Citations omitted.) *State v. Edmon*, 28 Wn. App. 98, 102-03, 621 P.2d 1310, *review denied*, 95 Wn.2d 1019 (1981);

---

is no premeditation or no planning that goes into it. It's impulsive, almost a snap. The anger rapist uses probably whatever he has on his person for weapons, or picks up a stick, but doesn't plan to carry knives, guns, or other things to commit rape. The rape or the assault is very short lived. There is often demeaning language in an attempt to humiliate. The object of the attack is the assault, to release this pent up anger."

*State v. Thamert*, 45 Wn. App. 143, 147, 723 P.2d 1204, *review denied*, 107 Wn.2d 1014 (1986).

Harper claims that Dr. Marra's testimony fails under requirements 1, 5, 6, 7, 8, and 9 because the testimony described a classification of behavior, not a mental disorder; because Dr. Marra failed to give an opinion as to Harper's inability to form a premeditated intent to kill; because he testified to Harper's mental state at the time he pulled the victim off the road rather than at the time he cut her; and because he failed to explain how being an "anger rapist" causes an inability to form the requisite intent. Harper asserts that under *State v. Thomas, supra,* the failure to properly present a diminished capacity defense is ineffective assistance of counsel and reversible error.

While the record demonstrates that Harper did not meet the standards for a diminished capacity defense, the evidence does show that the defense counsel sought to disprove premeditation by proving that Harper was an "anger rapist". This appears to have been a tactical decision, as supported by Dr. Marra's affidavit.[3]

■ Harper's reliance on *State v. Thomas, supra,* is misplaced. In *Thomas,* counsel failed to propose any jury instructions on the defendant's state of mind when the defense was an inability to act willfully and wantonly because of voluntary intoxication. The trial counsel also presented as an expert witness an alcohol counselor trainee.

---

[3]The State's response to Harper's personal restraint petition includes an affidavit from Dr. Marra which says:

That I did discuss, at length, with both attorneys, John McGilliard and Randy Loun, the potential of a diminished capacity defense as well as a defense of insanity. Through my discussions with the attorneys we chose to pursue a pattern defense regarding anger/rape syndrome as we felt this would be the best approach at trial since the diminished capacity defense did not reach the threshold levels of incapacity as required in *State v. Edmon* from our evaluation.

While this evidence is outside the record and cannot be considered on the direct appeal, it can be considered as part of the consolidated petition, which also raises ineffective assistance of counsel. *State v. Bugai,* 30 Wn. App. 156, 158, 632 P.2d 917, *review denied,* 96 Wn.2d 1023 (1981); *State v. King,* 24 Wn. App. 495, 505, 601 P.2d 982 (1979).

Consequently, Thomas was left without any scientific explanation of his behavior to support his defense or jury instructions that properly defined the law. In the case at bar, Dr. Marra presented a scientific explanation of Harper's behavior: Harper's condition of being an "anger rapist". Given the information known to Harper's counsel at the time of trial, this was the only defense available to Harper because Dr. Marra had opined that Harper did not satisfy the standards for a diminished capacity defense. Defense counsel's conduct did not fall below the objective standard of reasonableness.

▮ In his personal restraint petition, Harper argues that trial counsel's failure to obtain an expert opinion supporting diminished capacity, such as Dr. Petrich's opinion obtained by appellate counsel discussed below, constitutes ineffective assistance of counsel. Harper has not shown deficient performance by trial counsel. Dr. Marra, the expert obtained by Harper's original counsel and retained by trial counsel, was qualified to evaluate Harper and render an opinion. Dr. Marra did so, and concluded that Harper did not meet the standards for a diminished capacity defense. In effect, Harper's argument is that trial counsel's performance was deficient because he did not continue seeking out expert opinions until he found an expert who was willing to opine that Harper did meet the diminished capacity standards. However, he makes this argument with the post hoc knowledge that such an expert existed, but was not consulted until after the trial. We disagree that counsel's failure to consult additional experts fell below the objective standard of reasonableness.

MATERIAL FACTS NOT PREVIOUSLY PRESENTED
AND HEARD

In his personal restraint petition, Harper submitted an affidavit of Dr. John Petrich, who examined Harper and the materials in Harper's file. Dr. Petrich stated with a reasonable degree of medical certainty that Harper could not have formed a premeditative intent to kill because he was suffer-

ing from "depersonalization disorder", a dissociative mental disorder.[4] Harper asserts, and we assume for purposes of this opinion, that Dr. Petrich's opinion would have satisfied the requirements for a diminished capacity defense, as noted in *State v. Edmon, supra.*

RAP 16.4(c)(3) defines one form of unlawful restraint as when "[m]aterial facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction, sentence, or other order entered in a criminal proceeding or civil proceeding instituted by the state or local government". Harper argues that Dr. Petrich's opinion constitutes such a "material fact", and therefore his conviction should be vacated.

■ The State responds that the evidence presented in the petition should be subjected to the same standards as those that apply to motions for new trial. CrR 7.6(a)(3) defines as grounds for a new trial "[n]ewly discovered evidence material for the defendant, which he could not have discovered with reasonable diligence and produced at the trial". The party asserting that newly discovered evidence justifies granting the defendant a new trial must demonstrate five things:

> (1) the evidence must be such that the results will probably change if a new trial were granted; (2) the evidence must have been discovered since the trial; (3) the evidence could not have been discovered before the trial by exercising due diligence; (4) the evidence must be material and admissible; and (5) the evidence cannot be merely cumulative or impeaching.

*State v. Davis*, 25 Wn. App. 134, 138, 605 P.2d 359 (1980); *State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981).

---

[4]According to Dr. Petrich's affidavit, the symptoms of a "depersonalization disorder", a type of dissociative disorder are: (1) the person feels detached from or feels on the outside of his or her body; (2) the person experiences feeling as though he or she were in a dream; (3) the person's reality testing remains intact, though his or her cognitive capacities are severely diminished; (4) the dissociative episode is so severe and persistent that it causes a marked distress; and (5) no symptoms of other disorders exist. A dissociative disorder is "state specific" and therefore cannot be identified through standard psychological testing. The disorder can only be identified by considering the events which took place during the dissociative state, and the person's memory of those events.

Harper argues that because he has asked for a new trial under RAP 16.4(c)(3) and not under CrR 7.6(a)(3), he need not satisfy the *Davis* factors, specifically the third factor that the evidence "could not have been discovered before the trial by exercising due diligence".

We conclude that the standard for vacation of a judgment and sentence under RAP 16.4(c)(3) is at least as stringent as that for a new trial under CrR 7.6(a). RAP 16.4(c)(3) was originally adopted as CrR 7.7(g)(4). 82 Wn.2d 1165-66 (1973). CrR 7.7 was rescinded at 86 Wn.2d 1335 (1976), when the Rules of Appellate Procedure were adopted, and was replaced with RAP 16.4(c)(3). The language of the rule was taken from 4 American Bar Ass'n, *Standards for Criminal Justice* (2d ed. 1980). Standard 22-2.1 provides, in pertinent part:

> A postconviction proceeding should be sufficiently broad to provide relief:
> (a) for meritorious claims challenging judgments of conviction and sentence, including cognizable claims:
>
> . . . .
> (v) that there exists evidence of material facts which were not, and in the exercise of due diligence could not have been, theretofore presented and heard in the proceedings leading to conviction and sentence, and that now require vacation of the conviction or sentence[.]

The commentary to Standard 22-2.1 states:

> The inclusion in a postconviction system of a remedy analogous to the motion for new trial on newly discovered evidence is a departure from the ordinary structure of . . . postconviction remedies, but there exists a close relationship between the factual issues that such motions raise and the other grounds for postconviction relief. Separation of the two inquiries could easily produce difficult questions of the proper remedy in certain cases.

When CrR 7.7(g)(4), now RAP 16.4(c)(3), was enacted, it was intended to be the postjudgment analogy to the posttrial motion for new trial under CrR 7.6(a)(3). As such, the same standard applies for determining whether there exists "newly discovered evidence", whether the motion is a post-

trial motion for new trial or a postjudgment petition for vacation of judgment. In *In re Jeffries*, 114 Wn.2d 485, 493, 789 P.2d 731 (1990), the Supreme Court stated a similar position:

> "[N]ewly discovered evidence" is grounds for relief in a personal restraint proceeding only if "[m]aterial facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction [or] sentence . . .".

■ Having determined that the *Davis* factors should apply to petitions for vacation of convictions on grounds of "[m]aterial facts . . . not . . . previously presented and heard", we hold that Dr. Petrich's opinion does not meet the *Davis* factors. In *State v. Evans*, 45 Wn. App. 611, 613-14, 726 P.2d 1009 (1986), *review denied*, 107 Wn.2d 1029 (1987), this court reversed the grant of a new trial that was based on the defendant's presentation of an opinion from a fire expert retained after the trial, who reviewed the evidence and presented an opinion different from the opinion presented by the defendant's trial expert. The court held that this new expert opinion, based on the facts available to the trial expert, did not constitute "newly discovered evidence" under the *Davis* factors:

> In sum, this strikes us as a classic case: the defendant loses, then hires a new lawyer, who hires a new expert, who examines the same evidence and produces a new opinion. We cannot accept this as a basis for a new trial.

*State v. Evans*, 45 Wn. App. at 614-15. *See also State v. Taylor*, 22 Wn. App. 308, 318, 589 P.2d 1250, *review denied*, 92 Wn.2d 1013 (1979). We also agree with the statements of Judge Reed in his concurring opinion:

> What we have in the instant case is, purely and simply, a question of expert witness competency. Experience has taught us that such "experts" rarely agree. What may be a crucial "fact" to one, may not be to another.
> Before affirming the grant of a new trial because the defense expert presented at trial overlooked or thought unimportant a fact or facts now deemed pertinent by an expert who

did not testify, we must ask whether all of those defendants who could now unearth a new expert, who finds "new facts" — which if believed by the same jury might cause them to acquit — were denied a fair trial, *i.e.* failed to receive substantial justice. Surely we have to answer in the negative, or finality goes by the boards and the system fails.

*State v. Evans*, 45 Wn. App. at 617-18 (Reed, J., concurring).

Although Dr. Petrich performed his own examination of Harper, his affidavit indicated that the depersonalization disorder, from which he believes Harper suffers, could be diagnosed only from the events that occurred during the dissociative state. Dr. Petrich then reviewed the same evidence from Harper's file that Dr. Marra reviewed in reaching his opinion on the "anger rapist" syndrome. Thus, we have the same situation as in *Evans*, the retention of new counsel, who retains a new expert, who reviews the same evidence, and presents a new opinion. Dr. Petrich's opinion does not constitute "material facts not previously presented and heard", just as the opinion in *Evans* did not constitute "newly discovered evidence". The due diligence portion of the *Davis* factors need not be addressed.

Harper was not denied effective assistance of counsel at trial. The opinion of Dr. Petrich, obtained by appellate counsel after Harper's conviction and sentence, does not constitute material facts not previously presented such that vacation of the conviction is required under RAP 16.4(c)(3). The conviction is affirmed and the petition is dismissed.

MORGAN, J., and WORSWICK, J. Pro Tem., concur.