# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In Re the Matter of the Personal Restraint of: | No. 47733-5-II |
| FRED CARL DURGELOH, | UNPUBLISHED OPINION |
| Petitioner. | |

LEE, J. – A jury found Fred Carl Durgeloh guilty of two counts of second degree assault, two counts of felony harassment, and unlawful possession of a firearm following a confrontation with police officers at his home. This court affirmed his convictions and sentences in an unpublished opinion in 2014. [1] Durgeloh timely filed this personal restraint petition, alleging he was denied effective assistance of counsel for counsel's failure to pursue a diminished capacity defense. We agree, grant Durgeloh's petition, reverse his convictions, and remand for further proceedings.

## FACTS

Durgeloh's caregiver, Sandra Uden, contacted the Cowlitz County Sheriff's Office alerting them that Durgeloh may be suicidal. Durgeloh was in a wheelchair due to a recent leg amputation. He also suffered from diabetes, hepatic encephalopathy (high levels of ammonia in the blood

---

[1] *See State v. Durgeloh,* noted at 180 Wn. App. 1023 (2014).

stream), chronic pain, liver disease, bipolar disease, and depression. At the time, Durgeloh was taking high doses of pain medication plus multiple psychotropic medication for his depression. When Uden called police, Durgeloh had been off his medication for "three, four" days. 2 Report of Proceedings (RP) at 239.

Deputies Ryan Cruser and Kimberly Moore arrived at the property to check on Durgeloh. They went to the entrance at the rear of the home, knocked on the door, and announced that they were from the sheriff's office. No one responded. The officers went back around the house and saw Durgeloh through the window, sitting in a wheelchair with a gun in his hand. Durgeloh threatened the officers that if they did not get off his property they were "going to die." 2 RP at 211. Durgeloh appeared agitated and complained about trespassing. He then asked the officers if they "want to die?" Clerk's Papers (CP) at 2.

Durgeloh pointed the gun in the officers' direction. The officers requested backup units, who arrived with a Special Weapons and Tactics team. Police negotiators were eventually able to talk Durgeloh out of his home. He came out unarmed and was placed under arrest.

Deputy Moore obtained a warrant to search the residence. During the search, officers found a box of .45 shells with some of the shells missing and a .45 caliber pistol in Durgeloh's bed. Durgeloh had a prior conviction for violating a no-contact order involving a family member and was prohibited from possessing a firearm.

The State charged Durgeloh by amended information with two counts of second degree assault with firearm enhancements for intentionally assaulting Officers Cruser and Moore with a handgun, two counts of felony harassment with firearm enhancements for knowingly threatening to kill Officers Cruser and Moore with a handgun, and one count of second degree unlawful possession of a firearm.

The trial court granted the State's request to require Durgeloh to undergo a mental health evaluation in order to determine his capacity to form the intent to commit the crimes. The State's mental health examiner, Dr. Glenn Morrison, concluded that "Durgeloh was "capable of forming a mental state of intent." Clerk's Papers (CP) at 34. This conclusion was based solely on his interview with Durgeloh and Uden, and his review of the police reports. Defense counsel did not request his own evaluation and did not pursue a diminished capacity defense.

Durgeloh was tried after several trial continuances caused by Durgeloh's deteriorating health, and a jury found Durgeloh guilty as charged. Prior to sentencing, defense counsel requested a competency evaluation.

Dr. Jerry Larson reviewed Durgeloh's mental and physical health history, conferred with Uden, and interviewed Durgeloh. Dr. Larson provided a detailed explanation of Durgeloh's health issues and medications, noting, "Hepatic encephalopathy and diabetes in an individual such as Mr. Durgeloh, who suffers from bipolar disease, results in significant intellectual, emotional, and physical impairment." CP at 101. He continued, "For reasons that neither [Uden] nor [Durgeloh] can explain, he stopped taking his medications. . . . He became depressed, hopeless, and suicidal and armed himself with a handgun. He intended to kill himself. . . . He was confused. He was obviously depressed." CP at 102. Dr. Larson noted that on the night in question, Durgeloh was

experiencing elevated "ammonia level[s] . . . his brain was . . . starved from sugar, its only source of fuel," without antidepressants, he experienced a "decrease in serotonin, norepinephrine, and likely dopamine" and he was also in "chronic pain and probable opioid withdrawal." CP at 102. Dr. Larson ultimately concluded, "His intent was self[-]injury and he had no intention of harming others. It is obvious, with reasonable medical certainty, that his behavior was the direct result of mental illness and his declining physical health." CP at 102.

Following several continuances caused by Durgeloh's health issues, the case proceeded to sentencing. Durgeloh had no prior felonies. Defense counsel requested a mitigated exceptional sentence based on the lack of criminal history, Dr. Larson's report, and Durgeloh's terminal condition. The State argued for a standard range sentence. In reply, defense counsel pointed out that Dr. Larson's report clearly concludes that Durgeloh's medical conditions, caused by not taking his medications, is reliable evidence that Durgeloh's mental capacity was in fact diminished at the time of the offense. Defense counsel then acknowledged that his decision not to argue diminished capacity sooner, "may be a good issue on the part of an appellate counsel." 3 RP at 390.

The trial court sentenced Durgeloh to 120 months, which was the low end of a standard range sentence plus four firearm enhancements. Durgeloh appealed, and this court affirmed his convictions and sentence.[2] Durgeloh now petitions this court for relief.

---

[2] *See State v. Durgeloh*, noted at 180 Wn. App. 1023.

ANALYSIS

Durgeloh contends he is unlawfully restrained because ineffective assistance of counsel denied him a fair trial. When considering a timely personal restraint petition, courts may grant relief to a petitioner only if the petitioner is under an unlawful restraint, as defined by RAP 16.4(c). RAP 16.4(a). A petitioner is unlawfully restrained if "[t]he conviction was obtained . . . in violation of the [state and/or federal] Constitution[s]." RAP 16.4(c)(2). To obtain relief on collateral review based on constitutional error, "the petitioner must demonstrate by a preponderance of the evidence that petitioner was actually and substantially prejudiced by the error." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004).

The Sixth Amendment to the United States Constitution and article 1, § 22 of the Washington State Constitution guarantee effective assistance of counsel. *In re Pers. Restraint of Riley*, 122 Wn.2d 772, 779-80, 863 P.2d 554 (1993). In reviewing an effective assistance of counsel challenge on collateral review, Washington follows the ineffective assistance of counsel test set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001).

To establish ineffective assistance of counsel, the defendant must show (1) counsel's representation fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88. Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 740 P.2d 1239 (1997). To show prejudice, Durgeloh must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *State v. McFarland*, 127 Wn.2d 322, 335, 899

5

P.2d 1251 (1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. If Durgeloh fails to satisfy either prong, the court need not inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). There is a strong presumption of effective assistance, and Durgeloh bears the burden of demonstrating the absence of a legitimate strategic or tactical reason for the challenged conduct. *State v. McNeal*, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). "[I]f a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

Durgeloh argues that he was denied effective assistance of counsel when counsel failed to obtain an expert opinion to support a diminished capacity defense prior to trial.[3] We agree.

Diminished capacity is not a true affirmative defense, but an argument that a specific element of the offense, mens rea, has not been proved. *State v. Gough*, 53 Wn. App. 619, 622, 768 P.2d 1028, *review denied*, 112 Wn.2d 1026 (1989)). To show diminished capacity, "a defendant must produce expert testimony demonstrating that a mental disorder, not amounting to insanity, impaired the defendant's ability to form the culpable mental state to commit the crime charged." *State v. Atsbeha*, 142 Wn.2d 904, 914, 16 P.3d 626 (2001).

---

[3] Durgeloh also argues that he was denied effective assistance of counsel when counsel failed to cite legal authority to support a mitigated exceptional sentence and failed to investigate a motion to suppress items seized following the search of Durgeloh's home. Because we grant this petition based on ineffective assistance of counsel for failing to pursue a diminished capacity defense, we do not address these arguments.

This court's opinion in *State v. Fedoruk*, 184 Wn. App. 866, 339 P.3d 233 (2014), is instructive. In *Fedoruk*, the State charged the defendant with second degree murder. There was ample evidence that the defendant had suffered documented mental illness. Doctors diagnosed Fedoruk with schizophrenia and prescribed him numerous psychotropic and antipsychotic medication, but he had a history of poor compliance with the medication regimens. *Id.* at 871-72. Because his attorney failed to raise the issue of an insanity defense and did not seek an expert until the day before jury selection, the trial court denied Fedoruk a continuance. *Id.* at 876. The jury found Fedoruk guilty as charged. On appeal, this court held, "The extensive history of mental illness outlined above, all of which was available to the defense from the beginning of the case, indicates that the decision not to seek to retain an expert to evaluate Fedoruk until the day before jury selection fell below an objective standard of reasonableness." *Id.* at 881-82. We went on to hold that Fedoruk was prejudiced by the failure to investigate a mental health defense because his "actions on the night of the killing were bizarre under any yardstick," raising the defense would have likely changed the trial outcome. *Id.* at 885.

Similarly here, the record contains ample evidence of Durgeloh's history of mental illness. Durgeloh suffered from diabetes, chronic pain, liver disease, a bipolar disorder, and depression. He had recently lost a leg and was confined to a wheelchair. He was taking large qualities of pain medication in addition to psychotropic medication. At the time the caregiver called police, Durgeloh had been off his medications for "three, four" days. 2 RP at 239. The State's expert performed a cursory review and found Durgeloh was able to understand his actions and form the requisite intent, but a doctor performing a more thorough evaluation and review of Durgeloh's mental and physical health history disagreed.

7

Mental illness alone is not enough to render defense counsel's failure to investigate deficient. But here, Durgeloh had an extensive medical history involving considerable amounts of pain and antidepressant medication, which he was not taking on the day of the incident. This was the circumstance that led his caregiver to call police. Defense counsel acknowledged that his decision to not pursue diminished capacity sooner and to simply rely on the State's evaluation may be "a good issue" for appeal. Durgeloh's medical history and defense counsel's reliance on the cursory evaluation of the State's evaluator show that counsel's decision to not pursue a diminished capacity defense prior to sentencing fell below an objective standard of reasonableness.

The State relies on *State v. Harper*, 64 Wn. App. 283, 290, 823 P.2d 1137 (1992), to argue that Durgeloh cannot show deficient performance by trial counsel. However, *Harper* is not persuasive. In *Harper*, we held that defense counsel's failure to consult additional experts until he found one that supported his theory "did not fall below the objective standard of reasonableness." *Id.* at 290. Here, defense counsel did not seek even one expert prior to trial to support a diminished capacity claim. It is difficult to imagine any strategic or tactical reason to not pursue a diminished capacity defense given Durgeloh's medical history, his lack of medicine on the day of the incident, his paranoid behavior, and the fact that Uden specifically called authorities to Durgeloh's residence because she feared he was suicidal. This amounted to deficient performance. Durgeloh's defense counsel recognized his deficiency during the sentencing hearing when he acknowledged his decision not to argue diminished capacity sooner, "may be a good issue on the part of an appellate counsel." 3 RP at 390.

We now turn to whether the failure to pursue a diminished capacity defense prejudiced Durgeloh. He must show a reasonable probability that, but for the deficient performance, the result

of the proceedings would have been different. *Fedoruk*, 184 Wn. App. at 884 (citing *State v. Thomas,* 109 Wn.2d 222, 226, 743 P.2d 816 (1987)). In *State v. Turner*, 143 Wn.2d 715, 730, 23 P.3d 499 (2001), our Supreme Court rejected a defendant's argument that his attorney's failure to present expert testimony in support of a diminished capacity defense denied him the effective assistance of counsel. The *Turner* court reasoned that Turner has failed to show prejudice because "[i]t cannot be determined from the record on appeal that any expert would have testified that Turner lacked the ability to form the specific intent required to commit the crimes with which he was charged." *Id.* at 730.

Here, unlike in *Turner*, there is a subsequent report from Dr. Larson stating "with reasonable medical certainty" Durgeloh was experiencing elevated ammonia levels, low-blood sugar, a decrease in serotonin, norepinephrine, and dopamine, and in opioid withdrawal, which lead to his desire to injure himself. CP at 102. Dr. Larson concluded that Durgeloh "had no intention of harming others" as required for the crimes charged. CP at 102.

Durgeloh has shown there is an expert that would have testified contrary to the State's expert. And given that Durgeloh's actions were bizarre and out of character on the night in question, like the defendant's actions in *Fedoruk,* there is a reasonable probability that a diminished capacity defense would have been successful. Accordingly, there is a reasonable probability the outcome would have been different if counsel presented a diminished capacity defense.

No. 47733-5-II

CONCLUSION

We hold that defense counsel's failure to timely retain a mental health expert or investigate the possibility of a diminished capacity defense amounted to deficient performance and that Durgeloh has shown a reasonable probability that the deficient performance prejudiced him. Durgeloh has, therefore, demonstrated actual and substantial prejudice and is entitled to relief. Accordingly, we grant Durgeloh's personal restraint petition, reverse his convictions, and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Johanson, P.J.

Sutton, J.

10