**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of: | No. 55064-4-II |
| KRISTOPHER JOHN RAMPELBERG, | UNPUBLISHED OPINION |
| Petitioner. | |

WORSWICK, J. — This case was transferred to us to be considered as a personal restraint petition (PRP) under RAP 7.8(c)(2) after Rampelberg filed a motion in the trial court to withdraw his guilty plea to second degree assault and felony hit and run. Mot. to Withdraw Plea (Kitsap County Super. Ct., Wash. Nov. 22, 2019) (MWP). Rampelberg moved to withdraw his plea, arguing (1) the State breached the plea agreement because it later filed charges it had agreed to forgo, (2) his plea was not knowing, intelligent, and voluntary, (3) he received ineffective assistance of counsel for advising him that his plea deal included the State's forbearance on filing additional charges, and (4) newly discovered evidence. We deny Rampelberg's petition.

FACTS

In March, 2018, Kristopher Rampelberg and his then-girlfriend Justice Rieger were breaking up. The two had a dispute, and Rampelberg became upset. He got into his large diesel pickup truck and drove by Rieger's friend's house. Rieger, and her friend, Elizabeth Anthony, were outside when Rampelberg's truck approached. Rampelberg accelerated his truck toward Anthony, who was standing in the street several hundred feet away from Rampelberg's truck. A neighbor stated he heard the noise from the acceleration from his yard. Despite Anthony's

efforts to run and jump out of the way, Rampelberg struck her in the knee with the front

passenger side grill of the truck. She sustained injuries to her knee and wrist and was transported

to a hospital. Rampelberg's truck sustained damages consistent with the collision with Anthony.

Rampelberg immediately fled the scene and did not answer his phone following the incident.

A police officer later spoke with Rampelberg on the phone about the event, and although

he claimed the incident was an accident, he admitted to striking Anthony with his truck.

Rampelberg stated he fled the scene because he "freaked out," but provided no additional

explanation as to why he did not stop to help Anthony or get her the medical help she needed.

The State charged Rampelberg with one count of second degree assault[1] and one count of

felony hit and run.[2] Rampelberg initially entered a plea of not guilty. During his pretrial release,

Rampelberg entered into plea negotiations with the State. Rampelberg asserts that his attorney

advised him the State offered to drop the hit and run charge if he would plead guilty to "a

felony." Rampelberg refused this offer.

In September, 2018, while this case was pending, Rampelberg was involved in another

incident that resulted in a referral to the prosecutor for a misdemeanor reckless driving charge.

Rampelberg asserts that following this incident, his attorney told him he had reached a deal with

the State not to charge Rampelberg with reckless driving stemming from the September incident

if he agreed to plead guilty to the two pending felony counts from the March incident. Jennifer

Wilson, who claims to have been present during conversations between Rampelberg and his

---

[1] RCW 9A.36.021(1)(c).

[2] RCW 46.52.020(4)(b).

attorney, states that Rampelberg's attorney said that he believed the prosecutor "would probably either drop the reckless driving charge or include it in the plea" if Rampelberg considered pleading guilty. MWP (Decl. of Jennifer Wilson, ¶ 6). Rampelberg claims that up to this point, he was opposed to pleading guilty because he was innocent of the felony charges. Rampelberg asserts he would not have pleaded guilty to felony charges without a promise from the prosecutor that he would not be charged with misdemeanor reckless driving.[3]

Rampelberg's attorney and the State prepared a plea agreement in October 2018, which was signed by Rampelberg, defense counsel, and prosecutor Kelly Montgomery. In the agreement, Rampelberg agreed to plead guilty to second degree assault and felony hit and run in exchange for a jointly-recommended exceptional downward sentence of nine months to be served via jail alternatives such as electronic home monitoring. The agreement stated "[a]ll prior offers, whether oral or written, are hereby withdrawn," and that the State agreed to file no further charges "for this incident." Br. of Resp't at App. D. The plea agreement contained no reference to any charges stemming from the September 2018 incident.

In November, Rampelberg entered an Alford plea of guilty to second degree assault and felony hit and run.[4] The prosecutor present in court was Ben Turner, a different prosecutor from the one who had negotiated the plea.

---

[3] In fact, a charging document for reckless driving, dated October 4, 2018 had already been drafted.

[4] *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L. Ed. 2d 162 (1970); by entering an Alford plea, Rampelberg allowed the trial court to examine the probable cause materials in considering the factual basis for the plea.

On his statement of plea, Rampelberg attested that "[n]o person has made promises of any kind to cause [him] to enter this plea except as set forth in this statement." MWP (Decl. of Teresa Groves (Groves Decl.), Ex. B, at 10, ¶ 10). The statement of plea also contained language that Rampelberg understood the consequences of his plea. It contained no reference to the September reckless driving allegation or any promises by the State not to charge him with offenses from other incidents. The statement of plea also stated "[t]he judge does not have to follow anyone's recommendation as to sentence." MWP (Groves Decl., Ex. B, at 4, ¶ 6(k)). The trial court signed Rampelberg's statement of plea declaring "I find the defendant's plea of guilty to be knowingly, intelligently and voluntarily made. Defendant understands the charges and the consequences of the plea."[5] MWP (Groves Decl., Ex. B, at 11).

After Rampelberg's plea was entered but before he was sentenced, the following exchange occurred:

> PROSECUTOR: The–part of this resolution was–and what Mr. Pimentel made sure to cover his client, as the court can see from the paperwork, is that he won't be able to have a license which will be really good. There is District Court case pending right now which is for reckless driving that occurred –
>
> DEFENSE COUNSEL: It is not pending. [The other prosecutor] said they weren't going to file it.
>
> PROSECUTOR: It is pending. It is filed.
>
> DEFENSE COUNSEL: I was under the impression it wasn't being filed. We'll talk.
>
> PROSECUTOR: It is not part of this. But when I look in DAMION, I believe that it's been filed. I can't be a hundred percent on that. But it was referred to us. So there was probable cause in an affidavit at a minimum for a pretty bad reckless

---

[5] The record on appeal does not include any plea colloquy. Rampelberg does not argue that the trial court's colloquy was insufficient.

driving incident. And [s]o it's important to the State that this individual get his life on track, not be a danger to the community, and stay out of his car for a while. And so with the court's finding that there was a vehicle obviously used in Counts 1 and 2, would be a license suspension. And so that was an important part of the negotiated agreement and why I think it's appropriate that it be EHM instead of jail. So all these things going into this, we're asking the court to follow this joint recommendation.

THE COURT: Okay. Mr. [Defense Counsel]?

DEFENSE COUNSEL: Good morning, Your Honor. I want to state for the record that I was under the impression that they agreed not to file this because of this plea. But I will discuss that with [Montgomery] because that discussion took place with her.

THE COURT: And I've already processed the guilty plea, so I think you would be looking at some collateral relief if you are going to go down that road. But we'll continue on this path today.

MWP (Groves Decl., Ex. C, Report of Proceedings (Nov. 28, 2018) at 1-3).

The trial court accepted the recommendation and sentenced Rampelberg to nine months of jail alternatives to include electronic home detention. According to Wilson, when Rampelberg learned that this plea agreement did not contain any promise from the State not to charge him for reckless driving related to the second incident, his attorney assured him that he would talk to the prosecutor to ensure they would "take care of it." MWP (Decl. of Jennifer Wilson, ¶ 9).

In February 2019, Rampelberg began serving his sentence. In April 2019, Rampelberg was notified by Kitsap District Court that he was being charged with reckless driving, based on the September 2018 incident. Rampelberg's parents contacted his attorney by email, stating they believed the State had agreed not to prosecute this charge. Rampelberg's attorney replied that he was working with prosecutors on the new charge, and that Rampelberg would need to appear if it could not be dismissed.

On May 17, 2019 defense counsel sent an email to the prosecutors on the case that stated:

Justin and Kelly,

I request you talk to Kelly because she promised me this would not be pursued if he plead to A2 and Hit and Run Injury. Kelly, will you please recall and discuss our agreement. The fact that Ben was right doesn't change my position. Kelly made the final decision on whether this case would be reduced. We discussed it at length. She indicated that if he plead the State would not follow through on this case. Kelly, did we or did we not have that conversation?

MWP (Decl. of John Rampelberg, Ex. B at 1).

On May 31, defense counsel sent the prosecutors another email stating:

Attached is the transcript of the felony plea and sentencing to A2 and Hit and Run Injury and a Notice for Case Setting for Reckless Driving scheduled for May 29, 2019. Please review these documents. I believe they solidify my position on this issue.

At sentencing, I was clearly of the belief that Kelly had informed me that your office had not filed a new referral for reckless driving (which turned out to be true) and if Mr. Rampelberg plead to A2 and Hit and Run, it would not be filed. Ben was adamant that it had already been filed (that turned out to be not true). In any event, I have a specific recollection of my conversation with Kelly. Kelly, do you remember it? Ben, you can attest that I've been telling you this all along and made these statements as an officer of the Court in open court at sentencing? I honestly believed that the case had not been filed and would not be filed because of the plea on that day.

I'm now realizing that the reason I didn't put the non-charge on the Reckless Driving in the plea agreement is because 1. Ben objected to [i]t but still insisted that we plead that day or lose the offer (Ben does this all the time) and 2. It was a representation that Kelly made to me and Ben wasn't aware of it. I specifically stated in the hearing that I would clear it up with Kelly. So, when you read the excerpt from the sentencing hearing you will see a couple things ... First, everything you guys wanted (specifically a lengthy loss of license) was accomplished by the plea. Second, I truly believed then and still do that we had an agreement to not charge the reckless that happened a couple months before this plea if he plead as agreed. That was specifically one of the reasons he plead–Final resolution to everything.

Please review this material and if you agree with me please dismiss.

MWP (Decl. of John Rampelberg, Ex. B at 2).

Although neither Turner nor Montgomery replied to the emails, a different prosecutor claimed they never agreed to dismiss the September 2018 reckless driving charge as part of the plea agreement.

Because an offender is not permitted to be on electronic home monitoring if he has pending charges, Rampelberg was removed from electronic home monitoring and taken into custody on May 24, 2019. On May 29, Rampelberg pleaded guilty to reckless driving.

After Rampelberg pleaded guilty to the two felonies, Anthony sued him for personal injury. According to an attorney in Rampelberg's civil case, Anthony had reported to medical staff following the incident that Rampelberg's truck "did not make contact with her body." MWP (Decl. of Kristopher Rampelberg, Ex. A at 2). This statement contradicted the statement she had made to police.

Rampelberg moved to withdraw his plea to second degree assault and felony hit and run. The trial court transferred Rampelberg's motion to us to be considered as a personal restraint petition under CrR 7.8(c)(2).[6]

## ANALYSIS

Rampelberg argues that he is entitled to withdraw his plea because (1) the State breached the plea agreement when it charged him with reckless driving from the September 2018 incident, (2) his plea was not knowing, intelligent, and voluntary, (3) he received ineffective assistance of

---

[6] The trial court ruled that Rampelberg "had not 'made a substantial showing that he . . . is entitled to relief,' nor does 'resolution of the motion . . . require a factual hearing.'" Order Transferring Defendant's Mot. to Withdraw Guilty Plea as Pers. Restraint Petition Pursuant to CrR 7.8(c)(2), (Kitsap County Super. Ct., Wash. July 21, 2020) (quoting CrR 7.8(c)(2)).

counsel, and (3) newly discovered evidence. We hold that Rampelberg has failed to show the alleged errors caused him actual or substantial prejudice and that his claim of newly discovered evidence fails. Consequently, we deny Rampelberg's personal restraint petition.

We consider Rampelberg's motion to withdraw his plea as a PRP. CrR 7.8(c)(2). To prevail in a PRP, "petitioner must prove either a (1) constitutional error that results in actual and substantial prejudice or (2) a nonconstitutional error that 'constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010) (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 672, 101 P.3d 1 (2004)). A petitioner may not rely on bald assertions and conclusory allegations. *In re Pers. Restraint of Lord*, 152 Wn.2d 182, 188, 94 P.3d 952 (2004). To prevail on a constitutional error, a petitioner must show by a preponderance of the evidence that the alleged error caused him actual and substantial prejudice. *Lord*, 152 Wn.2d at 188.

> In evaluating personal restraint petitions, we can: (1) dismiss the petition if the petitioner fails to make a prima facie showing of constitutional or nonconstitutional error; (2) remand for a full hearing if the petitioner makes a prima facie showing but the merits of the contentions cannot be determined solely from the record; or (3) grant the PRP without further hearing if the petitioner has proved actual prejudice or a miscarriage of justice.

*In re Pers. Restraint of Stockwell*, 160 Wn. App. 172, 176-77, 248 P.3d 576 (2011).

A.     *Breach*

Rampelberg argues that the State breached the plea agreement by charging him with reckless driving despite promising it would not do so. The State argues that the final plea agreement contained no such promise. We hold that Rampelberg has failed to prove that the State breached the plea agreement.

8

A petitioner can obtain relief from the State's breach of a plea agreement through a PRP. *Lord*, 152 Wn.2d at 189. If the petitioner can prove that the State breached the plea agreement, then the petitioner has successfully established he or she was actually and substantially prejudiced by a constitutional error, and thus he or she is entitled to relief. *Lord*, 152 Wn.2d at 189.

A plea agreement is a contract between a defendant and a prosecutor. *Lord*, 152 Wn.2d at 188. When carrying out the terms of a plea agreement, the State is required to act in good faith. *State v. Sledge*, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997). When the State breaches a plea agreement, the defendant is entitled to either specific performance or to rescind the agreement by withdrawing his or her plea. *State v. Tourtellotte*, 88 Wn.2d 579, 581-85, 564 P.2d 799 (1977). We review constitutional issues de novo. *State v. MacDonald*, 183 Wn.2d 1, 8, 346 P.3d 748 (2015).

Because a plea agreement is a contract, we conduct our analysis according to contract principles. *Sledge*, 133 Wn.2d at 838-39; *State v. Thomas,* 79 Wn. App. 32, 39, 899 P.2d 1312 (1995). We analyze plea agreements using principles of contract law. *See, e.g., State v. Armstrong*, 109 Wn. App. 458, 461, 35 P.3d 397 (2001). But because plea agreements are "more than simple common law contracts," additional constitutional issues are considered, including due process and fairness. *Sledge*, 133 Wn.2d at 839.

Here, because the written plea agreement is unambiguous, no extrinsic evidence is necessary to ascertain its meaning. *See State v. E.A.J.*, 116 Wn. App. 777, 785, 67 P.3d 518 (2003) (introducing extrinsic evidence to interpret an ambiguous plea agreement). The agreement states that Rampelberg pleaded guilty to two felony counts and waived his constitutional rights

as consideration for the State's promise to recommend an exceptional sentence downward. The agreement makes no mention of any promise by the State not to prosecute Rampelberg for the September reckless driving charge.

Rampelberg contends that the State made such a promise before it executed the written agreement, and that this promise was intended to be part of the final agreement. The State disputes this. But even if the State did, at some point, agree to forgo filing the reckless driving charge, the existence of such a promise is immaterial where the agreement contains an integration clause disclaiming any such promise. The plea specifically stated that "[n]o person has made promises of any kind to cause [him] to enter this plea except as set forth in this statement." MWP (Groves Decl., Ex. B ¶ 10). Thus, because the contract is unambiguous, we need no extrinsic evidence to understand the agreement, and we interpret the plea agreement as a question of law.

The plea agreement contained no promise not to prosecute Rampelberg for reckless driving related to the September incident. In fact, both the agreement and the plea statement expressly disavowed any promises made outside the written agreement. Therefore, Rampelberg failed to meet his burden to show that the State breached the plea agreement, and this argument fails.

B.    *Knowing, Intelligent, and Voluntary*

Rampelberg argues that his plea was not knowing, intelligent, or voluntary because he believed his attorney had obtained a non-prosecution promise from the State as part of his plea agreement. Rampelberg claims that he had no knowledge that his ability to serve his jail

10

sentence on electronic home monitoring would be put into jeopardy by the State's prosecution of the additional charge. We hold that Rampelberg's plea was knowing, intelligent, and voluntary.

Due process requires that the accused understands the nature of the charge and enters the plea intelligently and voluntarily. *State v. Buckman*, 190 Wn.2d 51, 59, 409 P.3d 193 (2018). A person makes a plea knowingly and voluntarily when they understand the plea's consequences. *Buckman*, 190 Wn.2d at 59. A defendant need not understand all consequences of a plea but rather only the direct consequences. *State v. Ross*, 129 Wn.2d 279, 284, 916 P.2d 405 (1996). Consequences are "direct" when they have a "definite, immediate and largely automatic effect on the range of the defendant's punishment." *State v. Kissee*, 88 Wn. App. 817, 821-22, 947 P.2d 262 (1997) (quoting *Ross*, 129 Wn.2d at 284). Consequences are "indirect" or "collateral" when they "flow[] not from the guilty plea itself but from additional proceedings." *Kissee*, 88 Wn. App. at 822 (quoting *Ross*, 129 Wn.2d at 285).

"When a defendant completes a plea statement and admits to reading, understanding, and signing it, this creates a strong presumption that the plea is voluntary." *State v. Smith*, 134 Wn.2d 849, 852, 953 P.2d 810 (1998). If the trial court "inquire[s] orally of the defendant and satisfies [itself] on the record of the existence of the various criteria of voluntariness, the presumption of voluntariness is well nigh irrefutable." *State v. Knotek*, 136 Wn. App. 412, 428-29, 149 P.3d 676 (2006) (quoting *State v. Perez*, 33 Wn. App. 258, 262, 654 P.2d 708 (1982)) (internal quotations omitted).

Petitioners can establish actual and substantial prejudice in the context of a constitutionally defective guilty plea when they show that they would more likely than not have refused to plead guilty and would have insisted on going to trial. *Buckman*, 190 Wn.2d at 65.

But "bare allegation[s] that [he] would not have pleaded guilty if he had known all of the consequences of the plea is not sufficient to establish prejudice." *Buckman*, 190 Wn.2d at 64. We apply an objective standard to determine whether a rational person in the position of the defendant would have not pleaded guilty and instead would have chosen to go to trial. *Buckman*, 190 Wn.2d at 70.

Here, given the unambiguous nature of the plea agreement and the plea statement, which were both signed by Rampelberg, there is a strong presumption that the plea was voluntary. Moreover, Rampelberg only claims he lacked knowledge of indirect, collateral consequences, not direct consequences. He claims he did not know that his ability to serve his jail sentence on electronic home monitoring would be placed in jeopardy by an additional prosecution. This argument fails for two reasons. First, as stated in his statement on plea of guilty, the judge does not have to follow anyone's recommendation as to sentence, and could have sentenced Rampelberg to jail without alternatives. Second, the consequence of being ineligible for electronic home monitoring would only arise from further proceedings. Rampelberg does not contend that he lacked any knowledge of the "definite, immediate and largely automatic effect[s]" that his guilty plea would have on his punishment. *Ross*, 129 Wn.2d at 284.

Rampelberg also fails to establish actual and substantial prejudice. To prevail, he must establish that a rational person in his situation would more likely than not have rejected the plea and proceeded to trial. Rampelberg contends through his own declarations and those of his family members and supporters that he would not have pleaded guilty but for the promise from the State not to prosecute him for the reckless driving offense. However, we do not conduct a subjective analysis. *Buckman*, 190 Wn.2d at 66. Rampelberg only offers bare assertions of

12

prejudice based on his own personal contentions about the weight of the evidence. He provides no objective, rational person analysis.

Turning to this analysis, we note that the evidence against Rampelberg was overwhelming, including multiple eyewitnesses to the incident, Rampelberg's flight from the scene, damage to Rampelberg's truck, and his own admissions to police. Rampelberg submits that Anthony's contrary statement to medical responders that the car did not hit her body is exculpatory, but, as discussed below, this statement does not mitigate against an assault conviction. In addition, under the plea agreement, the State recommended an exceptional downward sentence of nine months that may be served with jail alternatives. If Rampelberg had not accepted the plea offer, he would be facing a possibility of 6 to 12 months in jail for each charge. Rampelberg does not provide any persuasive argument for why a rational person in his position would have not pleaded guilty and instead would have chosen to go to trial. Not only is there ample evidence against him, but the plea agreement, in light of the evidence presented, was generous. A reasonable person in Rampelberg's position would not have chosen to go to trial.

Based on the record, there is a strong presumption that Rampelberg made his plea voluntarily. Moreover, because Rampelberg claims he lacked knowledge of only a collateral consequence of his plea, he cannot show that he has made a plea less than knowingly, voluntarily, and intelligently. Finally, Rampelberg offers no argument that a rational person in his situation would have insisted on going to trial, given the overwhelming evidence against him and the leniency of the plea agreement. Rampelberg's bare assertions and subjective analysis do not warrant relief. We hold that Rampelberg has failed to show actual and substantial prejudice in the context of the allegedly defective guilty plea.

C.      Ineffective Assistance of Counsel

Rampelberg argues that he received ineffective assistance of counsel. Specifically, he argues that his attorney assured him he would not be charged with reckless driving if he pleaded guilty, and that he would have insisted on going to trial but for his attorney's error.[7] We disagree.

The right to effective assistance of counsel is enshrined in our state constitution and recognized by the Supreme Court. *See* WASH. CONST. art. I, § 22; *Gideon v. Wainwright*, 372 U.S. 335, 337, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). To establish ineffective assistance of counsel, a defendant must show that counsel's performance was (1) deficient, and (2) resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Performance is deficient if it falls below an objective standard of reasonableness based on all the circumstances. *Strickland*, 466 U.S. at 687. Counsel's error regarding a guilty plea is prejudicial when there is a "reasonable probability" that the defendant would have insisted on going to trial but for counsel's error. *In re Pers. Restraint of Riley*, 122 Wn.2d 772, 780-81, 863 P.2d 554 (1993).

There is a strong presumption that counsel's assistance was effective. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If a defendant cannot show either prong of the ineffective assistance of counsel test, our inquiry need not go further. *See McFarland*, 127 Wn.2d at 334-35.

---

[7] Rampelberg submits the same argument for actual and substantial prejudice for both the constitutionally defective plea and ineffective assistance of counsel: he would not have pleaded guilty but for lack of knowledge.

Counsel has a duty to assist a defendant in evaluating a plea offer through thorough and prepared consultation. *State v. A.N.J.*, 168 Wn.2d 91, 111, 225 P.3d 956 (2010); RPC 1.1; RPC 1.2(a). Although the extent of counsel's investigation and consultation is relative to the facts and circumstances of each case, at the very least counsel must reasonably evaluate the evidence against the accused and the likelihood of a conviction if the case proceeds to trial so that the defendant can make a meaningful decision whether or not to plead guilty. *A.N.J.*, 168 Wn.2d at 111-12.

To be prejudicial, counsel's error in assisting a client when pleading guilty requires a showing that but for the error there is a reasonable probability that the client would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). We make this determination objectively without regard for the idiosyncrasies of the particular decision maker. *Hill*, 474 U.S. at 59-60. This test closely resembles that of prejudice for a constitutionally defective guilty plea. *See Buckman*, 190 Wn.2d at 69.

Here, it appears from the record that Rampelberg's attorney was misinformed about the State's intentions to file charges based on the September 2018 reckless driving incident before he entered Rampelberg's guilty plea. The record supports that Rampelberg's attorney believed he had obtained a promise from the State not to prosecute that charge. It follows then that Rampelberg's attorney informed Rampelberg that reckless driving charges would not be filed. Nonetheless, Rampelberg's attorney allowed Rampelberg to sign a plea agreement that did not include this term, and then allowed his client to enter a plea of guilty under the written terms of the agreement on the assumption he could adjust the agreement later. This behavior raises

questions about whether counsel's performance was in accordance with an objective standard of reasonableness in service of his client's best interests.

But because Rampelberg cannot show he was prejudiced, even assuming his attorney's performance was deficient, his claim fails. *McFarland*, 127 Wn.2d at 334-35. As explained above, Rampelberg cannot show that a rational person would have insisted on going to trial but for counsel's failure to inform him of the collateral consequence that the State may charge him with reckless driving. Rampelberg makes no attempt to show that a rational person would have insisted on going to trial instead of accepting an agreement where the State recommended an exceptional downward sentence.

We hold that Rampelberg's ineffective assistance of counsel claim fails.

D.      Newly Discovered Evidence

Rampelberg argues that newly discovered evidence that Anthony made a contradictory statement would change the outcome of his case, and that he is now entitled to withdraw his plea. We disagree.

There are three common law definitions of "assault": "(1) an unlawful touching (actual battery); (2) an attempt with unlawful force to inflict bodily injury upon another, tending but failing to accomplish it (attempted battery); and (3) putting another in apprehension of harm." *State v. Elmi*, 166 Wn.2d 209, 215, 207 P.3d 439 (2009). Newly discovered evidence claims raised in a PRP are subject to the same standards as a motion for a new trial. *In re Pers. Restraint Pet. of Copland*, 176 Wn. App. 432, 450, 309 P.3d 626 (2013). Petitioners must demonstrate five elements to succeed on a claim of newly discovered evidence when seeking relief:

(1) The evidence must be such that the results will probably change if a new trial were granted;
(2) The evidence must have been discovered since the trial;
(3) The evidence could not have been discovered before the trial by exercising due diligence;
(4) The evidence must be material and admissible; and
(5) The evidence cannot be merely cumulative or impeaching.

*State v. Harper*, 64 Wn. App. 283, 291, 823 P.2d 1137 (1992).

Here, Rampelberg's claim fails on at least three of the above elements. First, Rampelberg offers no explanation for why he could not have obtained this evidence before trial in the exercise of due diligence. Second, Anthony's statement to medical staff also appears to be merely impeachment evidence, and Rampelberg offers no explanation otherwise. Finally, this statement is not material, because even if Rampelberg's truck did not strike Anthony, the uncontroverted statements show that she would have been placed in apprehension of harm, which constitutes assault.

We hold that Rampelberg's claim for relief based on newly discovered evidence fails.

CONCLUSION

We hold that Rampelberg's petition for relief based on the allegation that the State breached the plea agreement fails because Rampelberg fails to show actual or substantial prejudice. We also hold that Rampelberg's claim that his guilty plea was not knowing, intelligent, or voluntary fails because Rampelberg cannot overcome the strong presumption that his plea was voluntary. He cannot show that he was unaware of the direct consequences of his plea, nor can he show that there was actual or substantial prejudice resulting from the alleged error because he fails to objectively show that a rational person would have insisted on going to trial. We hold that Rampelberg's claim of ineffective assistance of counsel also fails because he

17

cannot demonstrate resulting prejudice. Finally, we hold that Rampelberg's claim of newly discovered evidence fails because Rampelberg fails to demonstrate why the evidence could not have been discovered before trial in the exercise of reasonable diligence, why the evidence is not merely impeachment evidence, or why it is material. Accordingly, we deny Rampelberg's petition for relief. [8]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Glasgow, A.C.J.

Veljacic, J.

---

[8] We note that even if Rampbelberg's arguments were successful, a withdrawal of his guilty plea would have no effect on the separate reckless driving charge that Rampelberg later pleaded guilty to. Even if we allowed Rampelberg to withdraw his plea, he did not appeal the reckless driving conviction, and this PRP would not affect that conviction. Rampelberg would once again face trial for second degree assault and felony hit and run and assault, while the reckless driving charge would remain on his record.